[No. S010071. Dec. 2, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
ALBERT GREENWOOD BROWN, JR., Defendant and Appellant.

**COUNSEL**

Fern M. Laethem, State Public Defender, under appointment by the Supreme Court, Steffan Imhoff, Nancy Aspaturian, Jessica K. McGuire and Musawwir Spiegel, Deputy State Public Defenders, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Harley D. Mayfield and Gary W. Schons, Assistant Attorneys General, Robert M. Foster, Louis R. Hanoian, Pat Zaharopoulos and M. Howard Wayne, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

LUCAS, C. J.—In 1982, defendant was convicted of rape and first degree murder with special circumstances, and sentenced to death. We affirmed the guilt judgment and special circumstances findings, but reversed the penalty judgment. (*People* v. *Brown* (1985) 40 Cal.3d 512 [220 Cal.Rptr. 637, 709 P.2d 440] [*Brown I*].) The United States Supreme Court granted certiorari, and thereafter reversed the judgment of this court and remanded for further proceedings. (*California* v. *Brown* (1987) 479 U.S. 538, 543 [93 L.Ed.2d 934, 941, 107 S.Ct. 837].) Our opinion on remand found no error requiring retrial of the guilt or penalty issues, but because the trial court erred in its ruling on defendant's automatic motion to modify the verdict (Pen. Code, § 190.4, subd. (e)), we reversed the penalty judgment and remanded "to the trial court solely for prompt consideration of the automatic motion for modification of verdict." (*People* v. *Brown* (1988) 45 Cal.3d 1247, 1264 [248 Cal.Rptr. 817, 756 P.2d 204] [*Brown II*].)

Thereafter, defendant moved unsuccessfully to challenge the trial judge for cause (Code Civ. Proc., § 170.1, subd. (a)(6)(C)), and unsuccessfully

sought writ review of that determination (*id.*, § 170.3, subd. (d) [hereafter section 170.3(d)]). After a new modification hearing, the trial court denied the application to modify the penalty verdict, and reinstated the judgment of death. This appeal is automatic (Pen. Code, §§ 190.4, subd. (e), 1239, subd. (b)), and "limited to issues arising on the modification application." (*People v. Rodriguez* (1986) 42 Cal.3d 730, 795 [230 Cal.Rptr. 667, 726 P.2d 113]; *Brown II*, *supra*, 45 Cal.3d at p. 1264.) We affirm the judgment.

Defendant's primary claim on appeal is that he was denied due process because the judge who presided over the hearing was not impartial. The People assert defendant has no statutory or constitutional right to raise that issue on appeal. As explained below, we conclude section 170.3(d) does not bar appellate review of defendant's due process challenge. We also conclude, however, that the record does not support defendant's due process challenge to the impartiality of the hearing judge.

## I. *Facts and Procedure*

The facts are set out in our original opinion. (40 Cal.3d at pp. 522-525.) For purposes of this appeal, it is sufficient to note that defendant kidnapped, raped, and strangled to death a 15-year-old girl who was walking to school. A jury returned verdicts of guilt on the charges, and found alleged special circumstances to be true. At the penalty trial, the prosecution introduced evidence of defendant's prior rape of another young girl. Defendant presented mitigating expert testimony concerning his tragic upbringing and childhood. The jury returned a verdict of death.

Thereafter, the court heard argument on defendant's automatic motion under Penal Code section 190.4, subdivision (e) (hereafter Penal Code section 190.4(e)), for modification of the verdict. That section provides, inter alia, that the trial judge must "review the evidence, consider, take into account, and be guided by the aggravating and mitigating circumstances referred to in Section 190.3, and shall make a determination as to whether the jury's findings and verdicts that the aggravating circumstances outweigh the mitigating circumstances are contrary to the law or the evidence presented. *The judge shall state on the record the reasons for his findings.*" (Italics added.)

At defendant's initial hearing under Penal Code section 190.4(e), the trial court—Judge Mortland—simply pronounced a formal judgment of death, and failed to state reasons for his findings.

Accordingly, *Brown II*, *supra*, 45 Cal.3d at page 1264, held: "We find no error requiring retrial of the issues of guilt or penalty. However, we must

reverse the penalty judgment on the basis of the [Penal Code] section 190.4(e) error, and we do so. As in *Rodriguez*, the cause is remanded to the trial court solely for prompt consideration of the automatic motion for modification of verdict. ([*Rodriguez, supra,*] 42 Cal.3d at pp. 794-795.) The trial court's procedure, and the parties' appeal rights from the new judgment shall be as set out in *Rodriguez*." The referenced portion of *Rodriguez* provides: "If, [on remand], the court again denies the application for modification of the verdict, it shall reinstate the judgment of death. . . . Defendant's appeal from any reinstated death judgment shall be automatic ([Pen. Code,] §§ 190.4, subd. (e), 1239, subd. (b)), and limited to issues arising on the modification application." (42 Cal.3d at pp. 794-795.)

In mid-February 1989, about a month before the scheduled hearing on remand from this court, defendant filed a declaration of disqualification "for cause" against Judge Mortland under Code of Civil Procedure section 170.1, subdivision (a)(6)(C).[1] The factual basis for the motion was set out in declarations by defendant's counsel and investigators (§ 170.3, subd. (c)(1)).

Counsel for defendant, Monica Knox, declared under penalty of perjury: "On January 25, 1989, Judge Mortland telephoned the investigator engaged by defense counsel and inquired into the investigation being pursued, specifically in regards to interviews with jurors; Judge Mortland told the investigator that jurors did not have to talk, that he would talk to Judge Macomber about authorizing funds for such an investigation, that he believed there was no need for juror interviews, and that he believed such an investigation was a waste of taxpayers' money . . . .

"Later on the afternoon of January 25, 1989, I was contacted by telephone by Garry Raley, Assistant Court Executive Officer; Mr. Raley advised me that he was contacting me pursuant to Judge Mortland's instruction and that Judge Mortland wanted to know who had authorized contact with the jurors; I explained that no one had expressly authorized contact with the jurors but that Judge Macomber had authorized funds for an investigation and juror contact was part of that investigation; Mr. Raley said that Judge Mortland wanted to know what I was investigating; I responded that, with all due respect, I believed my investigation was confidential and I was under no legal obligation to reveal its details;

"On January 26, 1989, Judge Mortland contacted me personally by telephone; he asked what I was doing having an investigator contact jurors; I

---

[1]Future statutory references are to this code unless otherwise indicated. The cited subdivision and subpart provide: "(a) A judge shall be disqualified if any one or more of the following is true: [¶] . . . [¶] (6) For any reason . . . (C) a person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial. Bias or prejudice towards a lawyer in the proceeding may be grounds for disqualification."

responded it was part of the investigation I was conducting to prepare for the hearing scheduled in March; Judge Mortland read me part of the California Supreme Court opinion in this case and then said that jurors had nothing to do with the upcoming hearing; Judge Mortland went on for several minutes telling me, in a raised voice, that the jurors' role was 'culminated, terminated, over' several years ago, that jurors were irrelevant to the upcoming proceeding, and that he would not consider whatever I had to say at the hearing about the jurors or their role in the trial; Judge Mortland claimed a juror had complained about my investigator telling her that she was required to meet with him; I explained I would talk to my investigator and stop any such action, if it had in fact occurred; Judge Mortland concluded by saying that he believed my action in contacting jurors was unprofessional and he thought it should stop but that I would do what I would do;

"On January 26, 1989, a juror who had previously voluntarily agreed to be interviewed by my investigator cancelled the meeting saying she was no longer willing to be interviewed; she did state that between setting up the appointment and cancelling it she had spoken with Judge Mortland . . . ."[2]

Judge Mortland filed an answer denying prejudice. (§ 170.3, subd. (c)(3).) He confirmed most of the factual allegations contained in defendant's declarations, and expressly denied "that I am disqualified in any way or that I am biased or prejudiced against the defendant or defendant's counsel." Judge Mortland explained:

"While this matter was pending around late January or early February 1989, my bailiff received several calls from some of the jurors advising that an investigator was seeking to interview them and ask[ing] if they had to talk to that person. I told my bailiff to tell the jurors that they did not have to talk to any investigator and had a right not to do so.

"At one point I talked directly to one of the jurors on this matter of their right not to talk to the investigator. One of the jurors said that the investigator advised that if an interview were not given, he, the investigator, would be back with a court order.

"On one occasion I talked directly to a defense investigator who tried to explain that interviewing the jurors was necessary, and I tried to explain that it was not only not necessary, but was totally unnecessary and improper in that the only issue remaining was for the trial court to consider and either grant or deny the defense automatic motion to reduce the death penalty to life without the possibility of parole under Penal Code section 190.4(e).

---

[2]Defendant's two investigators filed brief declarations under penalty of perjury, corroborating the assertions in counsel's declaration.

"I also called defense counsel and advised her of the above and stated that I felt it was inappropriate and improper to have an investigator interviewing the jurors."

Finally, Judge Mortland recited our remand directions in *Brown II* (quoted, *ante*, pp. 327-328), and stated his understanding, based thereon, that "the functioning of the jurors was totally concluded" in this case.

The parties stipulated that Judge (now Justice) Robert Timlin decide the disqualification motion. (§ 170.3, subd. (c)(5).) There is no indication in the record that defendant sought to augment the declarations presented to Judge Timlin, nor is there indication that defendant sought a hearing or the opportunity to present additional evidence or argument on the issue. (See § 170.3, subd. (c)(6).)

In early April 1989, Judge Timlin, after considering the above described declarations and our remand instructions in *Brown II*, ruled Judge Mortland was not disqualified from presiding over the hearing on defendant's statutory modification motion. Judge Timlin found "the conduct and communications by the Judge . . . do not suggest indirectly or directly any bias or prejudice by him towards defendant, defendant's present attorney and her representatives, or towards any of the issues remaining to be resolved and determined in this case."[3]

Defendant immediately challenged this determination by filing in the Court of Appeal a petition for a writ of mandate and request for stay of the modification hearing, as required by section 170.3(d).[4] The Court of Appeal summarily denied relief, and defendant sought review and a stay in this court. We denied defendant's petition and request for a stay, and immediately thereafter, a hearing on the statutory modification motion was held before Judge Mortland.

---

[3]Judge Timlin's written order continued: "The court further finds and concludes that a person aware of the facts, as recited in [the] declarations and Answer, *might* not reasonably entertain a doubt that the judge would be able to be impartial in this case as to the defendant, his current attorney and her representatives and the issues remaining to be resolved and determined in this case. [¶] Based on said findings and conclusions the Court decides and determines that the Judge is not disqualified in any further proceedings in this case including consideration of the automatic motion for modification of the verdict under Section 190.4(e) of the Penal Code." (Italics added.) In view of Judge Timlin's conclusion that disqualification was unwarranted because Judge Mortland's conduct did not evince bias "indirectly or directly," it is apparent that Judge Timlin concluded that a person aware of the facts "would" not reasonably question Judge Mortland's impartiality.

[4]That section reads: "The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate from the appropriate court of appeal sought within 10 days of notice to the parties of the decision and only by the parties to the proceeding."

At the start of the Penal Code section 190.4(e) hearing Judge Mortland asked, "Is there any legal cause why we should not proceed?" Counsel for both parties responded "no." The prosecutor summarized the facts of the case as they relate to the statutory sentencing factors set out in Penal Code section 190.3. Defense counsel emphasized the court's obligation to make an "independent determination whether imposition of the death penalty upon the defendant is proper in light of the relevant evidence and the applicable law" (*Rodriguez, supra,* 42 Cal.3d at p. 793), and asserted, in light of defendant's redeeming characteristics, psychological problems, troubled childhood, and dysfunctional family, and when compared to others convicted of murder with special circumstances, that defendant did not deserve society's most severe punishment.

After counsel presented their arguments, the court recited various items of mitigating evidence (e.g., testimony of family members that defendant was kind and nonviolent, and expert testimony that although defendant suffered "extreme sexual maladjustment," he would not be a danger in prison). The court contrasted that evidence with the aggravating circumstances of the crime: the kidnapping, rape, and brutal murder of a 15-year-old girl, and the prior rape of another young girl, for which defendant was paroled from state prison only seven months before committing the present offense. Based on this evidence, the court found "the aggravating circumstances justify imposition of the death penalty . . . [and that] they outweigh the mitigating, and justify the jury's verdict . . . ." The court denied the motion for modification of verdict, and entered a new judgment of death.

While preparing the record for certification on the automatic appeal of Judge Mortland's denial of the modification motion, defendant moved the trial court to order "correction" of the record in various respects. He sought, inter alia, to "settle" the record by incorporating off-the-record conversations involving Judge Mortland that allegedly supported defendant's disqualification claim. He also sought a hearing before an out-of-county judge, to settle an alleged factual dispute concerning when Judge Mortland was served with the disqualification motion. (See *post,* fn. 6.) The trial court denied these requests, and defendant sought an order from this court directing that those "corrections" and "settlements" be made.

We denied defendant's motion. We rejected the request to settle the record with off-the-record conversations relating to the disqualification ruling because they were not part of the record before Judge Timlin when he ruled on

the disqualification motion.[5] ■ A defendant cannot challenge a lower court's ruling and then "augment the record" with information not presented to (or withheld from) the lower court. (See *People* v. *Chi Ko Wong* (1976) 18 Cal.3d 698, 711-712 [135 Cal.Rptr. 392, 557 P.2d 976].) For the same reason, we denied the request to order a hearing before an out-of-county judge, to settle an alleged factual dispute concerning when Judge Mortland was served with the disqualification motion.[6]

## II. *Analysis*

### A. *Judicial Bias*

■ Defendant asserts his right to due process of law under the state and federal Constitutions was violated because he was "sentenced to death by a judge who was not impartial." (See, e.g., *Arizona* v. *Fulminante* (1991) 499 U.S. 279, 309 [113 L.Ed.2d 302, 331, 111 S.Ct. 1246] [trial by judge who is not fair or impartial constitutes "structural defect[ ] in the constitution of the trial mechanism" and resulting judgment is reversible per se]; see also *Gomez* v. *United States* (1989) 490 U.S. 858, 876 [104 L.Ed.2d 923, 939-940, 109 S.Ct. 2237]; *Gray* v. *Mississippi* (1987) 481 U.S. 648, 668 [95 L.Ed.2d 622, 639-640, 107 S.Ct. 2045] ["impartiality of the adjudicator goes to the very integrity of the legal system"]; *Rose* v. *Clark* (1986) 478 U.S. 570, 579, fn. 7 [92 L.Ed.2d 460, 471, 106 S.Ct. 3101]; *Tumey* v. *Ohio* (1927) 273 U.S. 510, 535 [71 L.Ed. 749, 759, 47 S.Ct. 437, 50 A.L.R. 1243] ["No matter what the evidence was against him, he had the right to have an impartial judge."].) His challenge is based exclusively on the record

---

[5]Nor, as suggested above, is there any indication in the record that defendant sought to bring any such conversation to Judge Timlin's attention before he ruled on the disqualification motion.

[6]Defendant apparently sought to show that Judge Mortland failed to file his answer to the disqualification motion within 10 days "after the filing or service, whichever is later," of defendant's motion. (§ 170.3, subd. (c)(3).) Under section 170.3, subdivision (c)(4), "A judge who fails to . . . answer within the time allowed shall be deemed to have consented to his . . . disqualification . . . ."

As noted in the text, because defendant failed to raise this issue before Judge Timlin, it would be improper to augment the record on appeal to include material not presented to Judge Timlin. In any event, defendant's claim concerning the "deemed disqualification" of Judge Mortland, based on failure to respond within 10 days of the alleged service date, is called into doubt by (i) the disqualification motion itself, which recites service on the district attorney, but conspicuously omits mention of service on Judge Mortland, and (ii) defendant's failure to raise the "deemed disqualification" claim before either Judge Timlin, who ruled on the disqualification motion, or before Judge Mortland, who expressly asked counsel at the start of the Penal Code section 190.4(e) hearing whether there was "any legal cause why we should not proceed?"

presented to Judge Timlin on the disqualification motion.[7] The People, citing section 170.3(d) and *People* v. *Hull* (1991) 1 Cal.4th 266 [2 Cal.Rptr.2d 526, 820 P.2d 1036] (hereafter *Hull*), assert defendant's attempt to attack Judge Timlin's ruling on the disqualification motion is not cognizable on this appeal.

As noted above, section 170.3(d), enacted in 1984, provides: *"The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate from the appropriate court of appeal sought within 10 days of notice to the parties of the decision* and only by the parties to the proceeding." (Italics added.)

In *Hull*, *supra*, 1 Cal.4th 266, we concluded this provision governs both for cause (§ 170.1) and peremptory (§ 170.6) challenges brought under the statutory scheme. (1 Cal.4th at pp. 269-274.) In the course of our analysis, we observed that the section was designed to promote judicial economy by forcing expedited resolution of all disqualification challenges,[8] and we construed the section as precluding a litigant from challenging denial of a disqualification motion on appeal from a final judgment. (1 Cal.4th at p. 275; accord, *Guedalia* v. *Superior Court* (1989) 211 Cal.App.3d 1156, 1161 [260 Cal.Rptr. 99].) In other words, we concluded that section 170.3(d) creates an exception to the general rule that interlocutory rulings are reviewable on appeal from a final judgment. (See Pen. Code, § 1259; Code Civ. Proc., § 906.)

Defendant asserts the statute is unconstitutional insofar as it purports to bar appellate review of his due process claim. The People, in response, suggest we resolved this issue against defendant's view in *Hull*, *supra*, 1 Cal.4th 266. As we shall explain, we do not interpret the statute to bar appellate review of defendant's due process claim, and we conclude that *Hull*, *supra*, does not resolve whether defendant may present his due process claim on appeal.

As noted above, the high court has made it clear that a defendant has a due process right to an impartial judge, and that violation of this right is a fatal defect in the trial mechanism. In view of this established federal constitutional authority, to foreclose appellate attack on the fundamental constitutional integrity of the judgment would be a radical and extreme step. It

---

[7]Defendant does not assert that the record of the hearing on his modification motion establishes any ground for suspecting Judge Mortland was biased against him or his counsel. (See *People* v. *Clark* (1992) 3 Cal.4th 41, 143-149 [10 Cal.Rptr.2d 554, 833 P.2d 561].)

[8]We noted the purpose behind the statute: " 'The Legislature obviously opted for speedy review of a disqualification ruling, since permitting that ruling to be attacked later on appeal of the judgment could invalidate every ruling made by the trial court judge after the disqualification motion was denied.' " (1 Cal.4th at p. 270.)

would simultaneously (i) preclude traditional full appellate review of defendant's federal constitutional claim, and (ii) impair what defendant asserts is his state constitutional right of appeal.

We believe it is unlikely that the Legislature, acting in good faith and having considered the issue, would have intended to bar the appellate claim that a final judgment is constitutionally invalid for bias. By the same token, we believe that if the Legislature intended such a result, we would find evidence that the problem was carefully examined and consciously resolved.

Accordingly, all presumptions are against such a construction. ■ Any and all reasonable doubts should be resolved in favor of preserving fundamental constitutional claims on appeal. Therefore, we will not find statutory foreclosure of such a claim unless that result is *compelled* by the statute's plain language or other conclusive indicia of specific legislative intent.

There is no such evidence here. ■ Section 170.3(d) forecloses appeal of a claim that a *statutory* motion for disqualification authorized by section 170.1 was erroneously denied, and this preclusion applies even when the statutory basis for the motion appears to codify due process grounds for challenging the impartiality of a judge. (Compare § 170.1, subd. (a)(6)(C), with *In re Murchison* (1955) 349 U.S. 133, 136 [99 L.Ed. 942, 946, 75 S.Ct. 623], and *Tumey* v. *Ohio, supra,* 273 U.S. 510, 533 [71 L.Ed. 749, 758-759].) ■ Nothing in section 170.3(d), however, explicitly insulates a final judgment from appellate attack on the fundamental constitutional ground that the judgment was procured before an adjudicator who was biased.

Nor are we aware of any other conclusive evidence that the Legislature intended to bar appellate review of the due process claim raised in this case. In this regard, we have consulted the "Legislative Intent Service" history of section 170.3. (See *People* v. *Jenkins* (1987) 196 Cal.App.3d 394, 404 [241 Cal.Rptr. 827].) Although the Legislature clearly intended that statutory disqualification challenges be expeditiously presented and reviewed, nothing in the history suggests the drafters considered the effect of section 170.3(d) on nonstatutory due process claims of judicial bias.

As suggested above, an additional ground informs our construction of section 170.3(d). Defendant asserts article VI, section 11, of the state Constitution grants him the right to raise his due process claim on appeal from a final judgment of death in a capital case.[9] We need not, and do not, decide whether defendant in fact has such a state constitutional right of

---

[9]Defendant cites *Haight* v. *Gay* (1857) 8 Cal. 297, 300 (Legislature "cannot substantially impair the right of appeal"), *People* v. *Perry* (1889) 79 Cal. 105, 108 [21 P. 423] (Legislature

appeal. It is enough to determine that his argument is credible; given the maxim that a statute must be construed, if possible, to avoid constitutional issues, we will not ascribe to the Legislature an intent to bar appellate review of defendant's due process claim. (*Shealor* v. *City of Lodi* (1944) 23 Cal.2d 647, 653 [145 P.2d 574]; *Shafter-Wasco Irr. Dist.* (1942) 55 Cal.App.2d 484, 488-489 [130 P.2d 755].)[10]

These factors lead us to construe the statute as applied to defendant's claim as follows: Section 170.3(d) applies to all *statutory* judicial disqualification claims—even those claims based on statutory provisions that, like section 170.1, subdivision (a)(6)(C), appear to codify due process grounds for relief—but section 170.3(d) does not apply to, and hence does not bar, review (on appeal from a final judgment) of *nonstatutory* claims that a final judgment is constitutionally invalid because of judicial bias.

Our conclusion does not alter our construction of section 170.3(d) in *Hull, supra*, 1 Cal.4th 266. Even in a capital case, the denial of a *statutory* judicial disqualification motion is not subject to interlocutory appeal; instead, all litigants who seek to challenge denial of a statutory judicial disqualification motion are relegated to writ review as described in section 170.3(d).

As noted above, the statutory ground on which defendant in this case initially relied to challenge Judge Mortland—section 170.1, subdivision

has no power "to . . . take from the parties the right of appeal"), *In re Sutter-Butte By-Pass Amendment* (1923) 190 Cal. 532, 536 [213 P. 974] ("litigants have a constitutionally guaranteed right of appeal in all litigated matters within the express jurisdiction of appellate courts"), and *Byers* v. *Smith* (1935) 4 Cal.2d 209, 214 [47 P.2d 705] ("the legislature has not the power, either through direct enactment or indirect device, to destroy or abridge the right of an appeal constitutionally granted"). (See also Browne, Report of the Debates in the Convention of California on the Formation of the State Constitution (1850), pp. 225-231; 2 Willis & Stockton, Debates and Proceedings of the Constitutional Convention of the State of California (1880) pp. 964-981; *id.*, vol. 3, p. 1333.)

Defendant asserts that when article VI of the Constitution was revised in 1966 to read as it presently does, neither the drafters nor the voters intended to alter the principles articulated in the earlier constitutional debates and the cases set out above. (See *People* v. *Hawes* (1982) 129 Cal.App.3d 930, 935 [181 Cal.Rptr. 456].) Finally, defendant asserts that decisions containing statements contrary to those quoted above are distinguishable. (See, e.g., *Agricultural Labor Relations Bd.* v. *Tex-Cal Land Management, Inc.* (1987) 43 Cal.3d 696, 705 [238 Cal.Rptr. 780, 739 P.2d 140], *Agricultural Labor Relations Bd.* v. *Abatti Produce, Inc.* (1985) 168 Cal.App.3d 504, 509 [214 Cal.Rptr. 283]; *Modern Barber Colleges* v. *Cal. Emp. Stab. Com.* (1948) 31 Cal.2d 720, 728 [192 P.2d 916].)

[10]See also *People* v. *Valenti* (1957) 49 Cal.2d 199, 207 [316 P.2d 633] (" 'The [statutory] right of appeal is remedial and in doubtful cases the doubt should be resolved in favor of the right whenever the substantial interests of the party are affected by a judgment.' "); *People* v. *Bank of San Luis Obispo* (1907) 152 Cal. 261, 264 [92 P. 481] (same); *Bailey* v. *Fosca Oil Co., Ltd.* (1962) 211 Cal.App.2d 307, 309 [27 Cal.Rptr. 454] (same); *Kneeland* v. *Ethicon Suture Laboratories* (1952) 113 Cal.App.2d 335, 338 [248 P.2d 447] (same).

(a)(6)(C)—is drafted broadly enough to include "due process" grounds of relief for judicial bias. ■ In order to give maximum effect to the Legislature's clear intent that disqualification challenges be subject to prompt review by writ (*Hull, supra,* 1 Cal.4th at p. 275), we conclude that a litigant may, and should, seek to resolve such issues by statutory means, and that his negligent failure to do so may constitute a forfeiture of his constitutional claim. ■ But we also conclude that, because defendant (i) sought writ relief as required by section 170.3(d) (*ante,* pp. 330-331), and (ii) writ relief was summarily denied, he may assert on appeal, based on facts alleged in his unsuccessful disqualification motion under section 170.1, subdivision (a)(6)(C), a constitutional due process claim that the judge who presided over his hearing was not impartial.[11] (See Pen. Code, § 1259; Code Civ. Proc., § 906.) Accordingly, on his due process claim, defendant is entitled to the procedural protections afforded on appeal, namely, oral argument and—most important—a written opinion.[12]

■ As noted above, defense counsel admitted in her declaration that she informed Judge Mortland her investigation concerning the jurors was designed to produce evidence that she planned to offer at the Penal Code section 190.4(e) hearing. Such a hearing, however, is limited to review of the *evidence that was before the jury* (*People v. Jennings* (1988) 46 Cal.3d 963, 994-995 [251 Cal.Rptr. 278, 760 P.2d 475]; *People v. Williams* (1988) 45 Cal.3d 1268, 1329 [248 Cal.Rptr. 834, 756 P.2d 221]), and to a determination, by the judge, of whether the "jury's findings and verdicts that the aggravating circumstances outweigh the mitigating circumstances are contrary to law or the evidence presented" (Pen. Code, § 190.4(e)). Judge Mortland, apparently frustrated by defense counsel's investigation of matters that would be plainly irrelevant at the hearing, so advised defense counsel.

Although defense counsel might have believed that Judge Mortland's ex parte communications suggested possible prejudice, and although we do not approve of Judge Mortland's conduct in this regard, we agree with the conclusion of Judge Timlin that Judge Mortland's conduct did not rise to a level requiring disqualification. Under the circumstances of this case, we conclude a reasonable person "aware of the facts" of the case—and particularly, the limited nature of a Penal Code section 190.4(e) hearing and this court's express instructions on remand—would not entertain a doubt that

---

[11]If, on writ review, a litigant were afforded the substance of the procedural protections to which he would be entitled on appeal (i.e., oral argument and a written opinion), that litigant may be precluded by the law-of-the-case doctrine from asserting on appeal that the judge who presided over the trial or hearing was not impartial. (*Kowis v. Howard* (1992) 3 Cal.4th 888, 894 [12 Cal.Rptr.2d 728, 838 P.2d 250].)

[12]We disapprove *People v. Jenkins, supra,* 196 Cal.App.3d 394, 403-404, to the extent it is inconsistent with our decision.

Judge Mortland "would be able to be impartial" (§ 170.1, subd. (a)(6)(C)) at that hearing. Accordingly, we conclude that Judge Mortland's understandable frustration with counsel's conduct did not reasonably suggest he would be biased against counsel or defendant at the Penal Code section 190.4(e) hearing, and we thus reject defendant's due process challenge to the impartiality of the hearing judge. (*Tumey* v. *Ohio, supra,* 273 U.S. 510, 533 [71 L.Ed. 749, 758-759]; *In re Murchison, supra,* 349 U.S. 133, 136 [99 L.Ed. 942, 946].)

### B. *Consideration of Probation Report*

■ As noted above, in a hearing conducted under Penal Code section 190.4(e), the court may review only evidence that was presented to the jury. Defendant asserts the court violated this rule by considering a supplemental probation report.[13] (*People* v. *Lewis* (1990) 50 Cal.3d 262, 287 [266 Cal.Rptr. 834, 786 P.2d 892].)

The record does not establish that the trial court read and considered the probation report before ruling on the motion.[14] In any event, *assuming* the court read and considered the report, defendant cannot show prejudice. In *Lewis, supra,* we reversed for a new Penal Code section 190.4(e) hearing because the trial court referred to prejudicial information available only in the probation report when it stated its reasons for denial of the application. (50 Cal.3d at p. 287.) Here, by contrast, the court focused exclusively on evidence in the record in explaining its reasons for denial.

In *People* v. *Ramirez* (1990) 50 Cal.3d 1158, 1201-1202 [270 Cal.Rptr. 286, 791 P.2d 965], the trial court stated it read the probation report, and "briefly adverted" to some facts mentioned in the report. Despite the court's admitted error, we found, "the court's comments as a whole indicate that,

[13]The brief report recites the observation of a San Quentin corrections officer who works with condemned inmates. The officer asserted defendant is classified as a "grade B" inmate (defined as those " 'who have not adjusted well and are classified high violence, high escape risk, nonconforming, discipline problem inmates' ") rather than a "grade A" inmate (defined as those who " 'have adjusted well, are discipline free, and generally able to maintain themselves without significant controls' "). The report concludes, "there is nothing to suggest that the defendant is changed since . . . the time of his original sentencing in this matter. Therefore, it would seem appropriate that the defendant's motion for a modification of verdict be denied."

[14]Page 2 of the report contains the signatures of the probation officer who prepared the report, and the officer's supervisor who reviewed the report. It also contains a blank space for the judge's signature, below the phrase, "I have read and considered this report."

Defendant relies on the fact that in reciting the commitment judgment, which the court read into the record and then signed at the close of the Penal Code section 190.4(e) hearing, the court referred to the hearing as a "report and sentence hearing." That vague reference does not support a conclusion that the court read and considered the probation report.

unlike the situation in *People* v. *Lewis* . . . , those incidents did not play a significant role in the court's denial of the application. . . . Under these circumstances, we cannot say that there is a reasonable possibility that the court's improper consideration of the probation report affected its section 190.4(e) ruling." (*Id.*, at pp. 1201-1202.)

As noted above, in this case, unlike *Ramirez, supra*, it is not apparent that the court read and considered the probation report. In any event, in view of the properly presented evidence recounted by the court at the hearing, we cannot say there is a reasonable possibility that the court's alleged reading and consideration of the probation report affected its Penal Code section 190.4(e) ruling. (*People* v. *Ramirez, supra*, 50 Cal.3d at pp. 1201-1202; see also *People* v. *Whitt* (1990) 51 Cal.3d 620, 661 [274 Cal.Rptr. 252, 798 P.2d 849]; *People* v. *Gonzalez* (1990) 51 Cal.3d 1179, 1238 [275 Cal.Rptr. 729, 800 P.2d 1159].)[15]

## C. *Age as a Sentencing Factor*

Penal Code, section 190.3, factor (i), allows the sentencer to consider the "age of the defendant at the time of the crime." In *People* v. *Lucky* (1988) 45 Cal.3d 259, 302 [247 Cal.Rptr. 1, 753 P.2d 1052], we held that "age," as used in factor (i), is "a metonym for any age-related matter suggested by the evidence or by common experience or morality that might reasonably inform the choice of penalty." ■ Nevertheless, defendant asserts the prosecutor erred in arguing that defendant's age at the time of the crimes (26 years old) was an aggravating factor because defendant was a "person of . . . experience" with the criminal justice system who had been "exposed to some of its most severe sanctions, including state prison," and yet failed to learn from his past.

Although the court did not refer to age in its reasons denying modification, defendant asserts the judgment must be reversed because the prosecutor's argument invited the court to consider age as an unconstitutionally vague aggravating sentencing factor. We rejected a substantially identical constitutional claim in *People* v. *Tuilaepa* (1992) 4 Cal.4th 569 [15 Cal.Rptr.2d 382, 842 P.2d 1142] (cert. granted Dec. 6, 1993, __ U.S. __ [126 L.Ed.2d 563, 114 S.Ct. 598]), on the ground that Penal Code section 190.3, factor (i), as construed in *Lucky, supra*, 45 Cal.3d at page 302, "direct[s] the sentencer's attention to specific, provable, and commonly understandable

---

[15]For similar reasons, we reject defendant's conclusory assertion that the trial court's conduct violated his rights under the Eighth and Fourteenth Amendments to the federal Constitution to a "fair, accurate and reliable" penalty determination. It is not clear the court in fact erred; in any event, based on the record before us, the judgment is not constitutionally unfair, inaccurate, or unreliable.

facts about the defendant and the capital crime that might bear on his moral culpability. Having met these standards of relevance and specificity, factor [(i) is] not 'illusory' or otherwise impermissibly 'vague' (*Stringer* v. *Black* [(1992)] 503 U.S. __, __ [117 L.Ed.2d 367, 382, 112 S.Ct. 1130]) simply because [it leaves] the sentencer free to evaluate the evidence in accordance with his or her own subjective values." (*Tuilaepa, supra,* 4 Cal.4th at p. 595.)[16]

### D. *Timing of Court's Decision on Modification Ruling*

■ Defendant alleges the court read from a prepared statement when it denied his modification motion, and infers that the court must have pre-judged the application before hearing counsel's arguments. Assuming the court did in fact read from a prepared statement, there was no error. Nor would it demonstrate that the court arrived at its decision before the hearing. We addressed and rejected a substantially identical claim in *People* v. *Hayes* (1990) 52 Cal.3d 577 [276 Cal.Rptr. 874, 802 P.2d 376], and adhere to our *Hayes* analysis in this case as well. As we stated in *Hayes*: "We find nothing objectionable in the court's studying the merits of a motion in advance of the hearing and reaching a tentative conclusion as to how the motion should be resolved. Indeed, formulating and announcing tentative rulings in advance of argument is a common practice in law and motion matters. Nor do we see anything improper in the court's having reduced its tentative ruling to writing. To do so does not mean that the court is unalterably bound by the writing or that it will not amend or even discard the writing if counsel's arguments persuade the court that its tentative views were incorrect. . . ." (52 Cal.3d at p. 645.)

Defendant nevertheless insists that in order to afford him an opportunity for "meaningful" oral argument, a court should refrain from committing its tentative views to writing before the hearing. He asserts his own hearing "was about as meaningful as permitting a defendant to give a summation to a jury but only after the jury had reached its verdict."

We reject the analogy and the implication. Based on this court's own practice and experience (see Cal. Supreme Ct., Internal Operating Practices

---

[16]We likewise reject defendant's claim, submitted in a letter brief shortly before oral argument, that the sentencing factors considered by the court (Pen. Code, § 190.3) at the Penal Code section 190.4(e) hearing are unconstitutionally vague. (See *People* v. *Stansbury* (1993) 4 Cal.4th 1017, 1071 [17 Cal.Rptr.2d 174, 846 P.2d 756], and cases cited.)

Defendant also asserts the 1978 death penalty law is unconstitutional because it allegedly fails to properly narrow the class of death-eligible defendants. We recently rejected this claim in *People* v. *Wader* (1993) 5 Cal.4th 610, 669 [20 Cal.Rptr.2d 788, 854 P.2d 80].

Other issues raised in defendant's letter brief relate to the guilt and penalty phase jury instructions, and are hence not properly before us on this appeal, which as noted above is limited solely to issues arising on the Penal Code section 190.4(e) sentence modification application.

& Proc., VI, Calendars and Calendar Memoranda [West's Cal. Rules of Court (State ed. 1992 rev.) p. 955]), we know that tentative written determinations prepared prior to argument are both helpful to the court in collecting and organizing its thoughts, and not infrequently altered or even reversed after argument and further reflection. The suggestion that a defendant receives a "less meaningful" hearing when the court prepares a tentative opinion is simply untenable.

### III. *Conclusion*

We reject defendant's challenges to the court's ruling on the Penal Code section 190.4(e) motion, and affirm the judgment of death.

Kennard, J., Arabian, J., Baxter, J., and George, J., concurred.

**MOSK, J.**—I concur in the judgment. After review, I have found no reversible error or other defect.

I agree with the majority as to the cognizability on appeal of defendant's claim that the judge who sentenced him to death was not impartial, in violation of the due process clauses of the Fourteenth Amendment to the United States Constitution and article I, sections 7 and 15 of the California Constitution.

My reasons are as follows.

The Legislature has enacted a comprehensive statutory scheme, which is codified as chapter 3 of title 2 of part 1 of the Code of Civil Procedure, sections 170 through 170.8, entitled, Disqualifications of Judges. (See generally *People* v. *Hull* (1991) 1 Cal.4th 266, 269-275 [2 Cal.Rptr.2d 526, 820 P.2d 1036].) It defines certain statutory conditions under which a judge is declared "disqualified," i.e., "deprived of the power, right or privilege" to act (*id.* at p. 272). It establishes a procedure whereby a party may move to disqualify a judge, either for cause or peremptorily. In Code of Civil Procedure section 170.3, subdivision (d) (hereafter section 170.3(d)), it declares: "The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate from the appropriate court of appeal sought within 10 days of notice to the parties of the decision and only by the parties to the proceeding."

In section 170.3(d), the Legislature sought to preclude appellate review of the "determination of the question of the disqualification of a judge," i.e., the

ruling on the underlying motion. Hence, it aimed to prevent an appellate court from passing on the question whether the judge under challenge was in fact "deprived of the power, right or privilege" to act (*People* v. *Hull*, *supra*, 1 Cal.4th at p. 272) under one or more of the statutory conditions. It did not even purport to bar a party from claiming on appeal that a judge who participated in his case was not impartial.

It follows that defendant is not precluded by section 170.3(d) from claiming that Judge J. William Mortland, who sentenced him to death, was not impartial. He is merely barred by that provision from attacking Judge (now Justice) Robert J. Timlin's earlier denial of his motion to disqualify Judge Mortland—or, put otherwise, from arguing that Judge Mortland was in fact "deprived of the power, right or privilege" to act (*People* v. *Hull*, *supra*, 1 Cal.4th at p. 272) under one or more of the statutory conditions.

In my view, defendant does not establish his partiality claim against Judge Mortland. His failure, however, should not be taken to validate what transpired. Put simply, the judge's ex parte communications with counsel and counsel's investigator were altogether improper. They cannot, and must not, be condoned.

In conclusion, having found no reversible error or other defect, I concur in the judgment.

Panelli, J., concurred.

Appellant's petition for a rehearing was denied February 2, 1994.