Filed 1/20/16  P. v. Thierry CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B261839 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SA077040) |
| v. | |
| ALBERT MARTIN THIERRY, JR., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Katherine Mader, Judge.  Affirmed.

Mark Yanis, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In this appeal from a post-remand sentencing order, defendant Albert Martin Thierry, Jr., contends the trial court exhibited personal animosity and bias, and his attorney was ineffective in failing to bring a challenge for cause. (See Code Civ. Proc., § 170.1, subd. (a)(6)(A)(iii) [permitting challenge for cause where "person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial"].) Finding no evidence of judicial bias or ineffective assistance of counsel, we affirm.

## FACTUAL AND PROCEDURAL BACKROUND

In November 2011, defendant was convicted by a jury of two counts of second degree robbery and other crimes, and found to have served prior prison terms and to have suffered various prior convictions. The trial court imposed an indeterminate term of 65 years to life, consisting of two consecutive terms of 25 years to life, plus three consecutive five-year enhancements. The jury verdict was affirmed in a prior appeal, but the sentence was reversed with directions to vacate the sentence and conduct an inquiry into defendant's request to relieve his retained attorney consistent with the standards set out in *People v. Ortiz* (1990) 51 Cal.3d 975 (*Ortiz*). (*People v. Thierry* (April 30, 2014, No. B243589) [nonpub. opn.].)

After the remittitur issued, the trial court vacated the sentence and reconsidered defendant's request to relieve his retained counsel under *Ortiz*. The trial court acknowledged that *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*), which applies to dismissals of appointed rather than retained counsel, was inapplicable, and attributed its erroneous reliance on *Marsden* to its confusion as to whether defendant's trial attorney was appointed or retained.

The trial court questioned the timeliness of defendant's request for an appointed attorney. The court appointed a bar panel attorney, Joseph Walsh, to provide briefing on this issue. After receiving the requested briefing, the court appointed Mr. Walsh to represent defendant at the sentencing hearing.

Mr. Walsh moved to strike defendant's prior felony strike convictions under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, and requested a sentence of 20

2

years. The prosecutor sought consecutive life sentences based on the serious nature of the present robberies. The prosecutor described the first as an armed robbery of a lone female victim in an isolated garage, and the second as a planned robbery of a jewelry store in which a female clerk was pepper-sprayed after being duped into believing that defendant and his female companion were legitimate customers. The prosecutor argued for a Third Strike sentence because defendant's crimes were of increasing severity and the present robberies were committed shortly after his release on parole.

Mr. Walsh disagreed that the present offenses were serious, reasoning that "all robberies are violent." He argued against a Third Strike sentence, stating that defendant should not be punished for going to trial after rejecting a pretrial offer of 25 years to life. Mr. Walsh objected to the original sentence of 65 years to life as cruel and unusual, given that defendant would have to reach age 97 in order to be eligible for parole, which is not a realistic possibility given his heart condition. Defendant's uncle, a retired police officer, wrote a letter seeking leniency and providing assurances that defendant would not hurt anyone. Defendant also provided evidence of his completion of a non-violence program and his lack of disciplinary violations while in prison.

The trial court stated that although a defendant should not be punished for going to trial, the sentence need not match the pretrial offer. The court found that the current offenses, which were "incredibly vicious," "sophisticated," and required planning, were "precisely . . . the type of case that Three Strikes was designed" to address. The court rejected the uncle's assurances that defendant would not harm anyone, stating that both robberies were committed with a firearm. This prompted an objection by Mr. Walsh that as to the first robbery, the jury did not reach a verdict on the firearm allegation, which was dismissed, and as to the second, the robbery was not committed with a firearm but with a "pepper spray canister." The trial court did not disagree with these remarks.

Defendant took issue with the trial court's remarks, stating: "You know, I guess apparently your mind is made up. It is what it is. But I'm not going to let you sit here and talk about my family. You don't know me. And you say I'm this and that. You're going to do what you do. That's basically it. If I need to remind you, there were no

3

fingerprints in that store.  If I need to remind you, allegedly the camera was broke.  Allegedly, the second time the camera was turned off.  And I stipulated to you before.  You know, I'm convicted, that's it."  "I'm just saying I'm convicted.  That's it.  The jury found me guilty.  I'm convicted.  Anything I have to argue is going to have to be brought up on appeal.  I said it before and stand firm by what I said when she walked out of there.  I'm not going to let that lady get away with insurance fraud.  One description was given then she turned around and changed the description once she got with the officer.  And if you're going to make me look bad, do it correctly.  Do it—I'm not—I'm not coming down hard on you or nothing.  If you're going to do it, do it correctly.  You talk about my family saying they don't know[;] that's wrong.  You said I'm not doing anything.  I took up the plumbing trade.  You never asked me anything.  Bam.  Bam.  That's it.  65 years to life. . . ."

The trial court thanked defendant for his remarks, but stated that his uncle's assurances that "you would not hurt someone is not correct because I witnessed how you hurt people.  So as I indicated, the *Romero* motion is denied."  The trial court imposed the same sentence of 65 years to life that was imposed at the original hearing.  This timely appeal followed.

## DISCUSSION

Defendant contends the trial court's statements at the post-remand hearings exhibited a personal bias or animosity that warranted a disqualification for cause.  He alternatively argues that his attorney's failure to object constituted ineffective assistance of counsel.  We conclude the record does not support either contention.

Defendant argues the record contains undisputed evidence of judicial bias (citing *Briggs v. Superior Court* (2001) 87 Cal.App.4th 312, 319 [de novo standard of review applies to questions of law where the facts are not in dispute]).  He argues, for example, that the trial court gave a false explanation for applying the *Marsden* standard to his request to relieve his retained attorney—that it believed his attorney was appointed; conducted an unnecessary inquiry into the timeliness of his request for appointed counsel;

4

and made erroneous statements regarding his use of a gun.  According to defendant, the trial court "appeared to be displeased with appellant for trying to game the system and needlessly spend the taxpayers' money, which led to her failure to follow clear law on appellant's right to counsel."  The trial court "ultimately appointed counsel but only after it was apparent that she could not rely on her previously stated reasons for not doing so.  [¶] By this time it should have been clear there was a significant danger that the judge would not be able to adjudicate appellant's sentencing impartially, and that denial of his *Romero* motion 'in the interests of justice' was a foregone conclusion.  Further, while the judge likely could not properly refuse to appoint counsel, there was virtually no chance it would be overturned on appeal for denying appellant's *Romero* motion.  [¶] This is not to say the judge in this case intentionally had it in for appellant, but the record here would give a reasonable person cause to believe there was a significant danger she would not be able to adjudicate appellant's resentencing in a fair and impartial manner."

The cases cited by defendant are distinguishable.  In *United States v. Craig* (9th Cir. 1993) 1993 U.S.App. LEXIS 17168, the Ninth Circuit affirmed the defendant's conviction, but reversed and vacated his sentence, and remanded for a new sentencing hearing before a different trial judge.  The decision in *Craig* does not assist our analysis, because the remand order was governed by federal, not state, rules of procedure (see *Peracchi v. Superior Court* (2003) 30 Cal.4th 1245 [peremptory challenge unavailable upon reversal of sentence and remand for resentencing, because resentencing does not constitute new trial within meaning of Code Civ. Proc., § 170.6, subd. (a)(2)]), and lower federal court decisions are not binding on this court (*California Assn. for Health Services at Home v. State Dept. of Health Care Services* (2012) 204 Cal.App.4th 676, 684).

In *Offutt v. United States* (1954) 348 U.S. 11, the petitioner, an attorney, was held in contempt while representing his client in a criminal trial.  The Supreme Court reversed the judgment of contempt and remanded for a rehearing before a different judge, stating, "the fact that the Court of Appeals reduced the sentence from 10 days to 48 hours because the petitioner's conduct 'cannot fairly be considered apart from that of the trial judge,' is compelling proof that the latter failed to represent the impersonal authority of

law.  Plainly, the Court of Appeals thought that in the trial court's disposition of the misconduct of the petitioner there was an infusion of personal animosity." (*Id.* at pp. 15–16.)  There is no comparable evidence of personal animosity directed against defendant in this case.

In *Flier v. Superior Court* (1994) 23 Cal.App.4th 165, the appellate court found no support in the record for the order disqualifying the trial judge for cause under Code of Civil Procedure section 170.1, subdivision (a)(6)(C), and granted the People's petition for writ of mandate to set aside the order.  The court reached a similar conclusion in *People v. Brown* (1993) 6 Cal.4th 322, 327.

Applying the de novo standard of review to the record in this case, we similarly find no support for defendant's due process challenge based on a claim of judicial animosity or bias.  We do not view the trial court's request for briefing on the timeliness issue as improper; we find the court's references to defendant's use of a gun, even if erroneous, were promptly challenged by Mr. Walsh; and regardless whether the present offenses were committed with or without a firearm, the trial court possessed discretion to deny the *Romero* motion and impose consecutive life sentences.

Where, as here, the trial court imposes a lawful sentence, the mere fact that the sentence exceeded a pretrial settlement offer does not support a claim of judicial bias.  There is no allegation of sentencing error, and even if there were, the circumstances that would warrant a removal for cause do not exist in this case.  "[T]he statutory power of appellate courts to disqualify sentencing judges should be used sparingly and only where the interests of justice require it.  Disqualification may be necessary where the sentence of the original judge indicates an animus inconsistent with judicial objectivity.  It may also be called for where the judge's failure to follow the sentencing rules suggests a whimsical disregard of the sentencing scheme that is incompatible with a judicious effort to comply with its complex terms.  But mere sentencing error, given the complexity of the determinate sentencing scheme, does not justify removing the trial judge; a mere failure to comply with its requirements cannot be said to reflect a lack of objectivity implicating the interests of justice.  Nor would sentence reversal in such a case be likely

to cause the sentencing court to lose its objectivity.  Whatever the sting of reversal, vindictive retaliation against a successful defendant cannot be presumed to be the judicial reaction." (*People v. Gulbrandsen* (1989) 209 Cal.App.3d 1547, 1562–1563.)

Turning to the claim of ineffective assistance of counsel, we are guided by the well-established principle that an attorney's decision whether to challenge a trial judge is a tactical choice that is subject to great deference.  (*People v. Johnson* (2015) 60 Cal.4th 966, 979–980.)  In order to establish a claim of ineffective assistance of counsel, "'a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient performance was prejudicial, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant.' [Citation.]" (*Ibid.*) "'"There are, no doubt, an infinite number of reasons why counsel would not avail themselves of the opportunity to disqualify a judge.  The failure to do so is within the competence of counsel, and does not show ineffective counsel."'" [Citations.]" (*Id.* at p. 980.)

As discussed, the record does not support a finding of judicial bias or lack of objectivity.  Because a challenge for cause would necessarily have failed, the claim of ineffective assistance of counsel lacks merit.

## DISPOSITION

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EPSTEIN, P. J.

We concur:


WILLHITE, J.                              COLLINS, J.

7