Filed 1/9/26  P. v. Silva CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E084436 |
| v. | (Super.Ct.No. FVI20001642) |
| RUBEN DONALDO SILVA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Debra Harris, Judge.  Affirmed.

Jo Pastore, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Daniel Rogers and Adrian R. Contreras, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Ruben Donaldo Silva challenges the trial court's finding that he violated his probation terms. Defendant's sole claim on appeal is that court was biased against him. Defendant does not contest the People's argument that he forfeited his bias claim by not raising it below. We note that there was a ready statutory procedure available to defendant before the matter was adjudicated to assert, test, and remedy alleged claims of bias, according to a reasonable person standard. (Code Civ. Proc., § 170.1 [disqualification for cause]; *id.*, subd. (a)(6)(A)(iii) [alleged bias].) As we explain *post*, defendant's failure to raise his claim below forfeits any relief under both the foregoing statutory provisions and under the constitutional due process principles on which he now attempts to assert his bias claim on appeal. Because defendant forfeited his claim, his appellate challenge fails. We therefore affirm the trial court's probation revocation ruling.

## BACKGROUND

In June 2020, when he was almost 21 years old, defendant was charged with committing a lewd act days earlier upon a child under age 14. (Pen. Code, § 288, subd. (a).) In November 2022, the charge was dismissed pursuant to plea terms under which defendant entered a guilty plea to coercing the victim to engage in a sexual act by means of fraud meant to instill fear. (Pen. Code, § 266c.) The terms of the plea agreement included a grant of formal probation (24 months), provided that defendant served a six-month jail sentence and abided by his probation terms and conditions. In accepting the plea agreement, the bench officer noted the court did so "because of the fragile nature of the victim in this case." A psychological evaluation indicated that

defendant posed an average risk of sexual offense recidivism, based on Static-99R testing.

The probation report for defendant's probation/sentencing hearing described the circumstances of the offense as reflected in defendant's arrest report, as follows. The victim told her father that defendant raped her the evening she ran away from home, after she reactivated a social media account (SnapChat) earlier in the week. Defendant contacted her on the online platform after she posted a photograph of herself and her cat on her bed. When she said she was 13 years old, defendant said he was 14. When he learned they lived in the same town (Lucerne Valley), defendant called her and asked that they meet. The victim snuck out of her home and met defendant at the end of a nearby dirt road. He drove her to his residence, where they played chess and watched a movie until 3:00 a.m.; defendant then returned her to where he picked her up.

Defendant recontacted the victim later that week, picked her up at the same location, and again took her to his residence, where his bedroom was in the garage. He lay down beside her on his bed as she watched television. He kissed her, groped her, told her to take off her shirt and when she said, "No," he insisted, telling her he had firearms in his car. He went outside to his vehicle and returned with the weapons, which he placed on a shelf near his bed. The victim described the guns as one being "long" and the other was black with an orange tip. Defendant forced her to take a pill that she recalled was labeled "Plan B" or similar. He told her it was birth control, which she said she did not need because she did not want to have sex; she ingested it however out of fear.

Defendant began threatening the victim while trying to remove her clothing. He attempted to remove her leggings, pointed the black handgun at her, and told her to lie back on the bed. She complied; then he placed one hand over her mouth and undressed her with the other. He held the victim down when she tried to flee. The victim cried, he held her arms down, rubbed her genital area and inserted his fingers and then his penis in her vagina. He made sexual comments and ejaculated. The victim put her clothes on and fled the garage. As she walked home, defendant followed her in his car. He told her to get inside and then he drove her to the end of the dirt road, where he dropped her off.

In February 2023, within three months of his guilty plea, defendant violated his probation terms by traveling out of state. He admitted the violation at a hearing in April 2023, waiving his right to contest revocation of probation. (See *People v. Vickers* (1972) 8 Cal.3d 451 (*Vickers*) [revocation hearing].) The trial court amended and reinstated its grant of probation, conditioned on defendant serving 365 days in jail.

In June 2024, before defendant's probation term was due to expire in November 2024, the probation department filed a petition alleging further probation violations discovered in a home compliance check. The alleged violations included defendant's failure to cooperate with his probation officer on his rehabilitation plan. Other violations included breach of probation conditions, including: (1) not to use or possess a computer or internet device, except for employment purposes; and (2) not to possess any form of sexually explicit movie videos or material, nor frequent establishments where such material is the primary content, nor utilize any sexually

4

oriented telephonic services.  Defendant's probation conditions also prohibited possession of obscene material as defined in Penal Code section 311.

On July 10, 2024, the prosecutor and defense counsel appeared at a prehearing conference to schedule defendant's *Vickers* hearing later that month.  After a bench conference, the matter proceeded on the record.  The prosecutor was apparently newly assigned to the judge's department (Hon. Debra Harris).  Defendant's appointed attorney, a deputy public defender, suggested there was "an indicated sentence o[f] the low term on this matter.  It's a two, three, four years triad."[1]

The trial court, noting the prosecutor's new assignment in its department, recounted that it previously asked the parties if there was a case on calendar "that he's concerned about [i.e., the prosecutor], . . . and [when] he said no, . . . I said I was outraged."  The court, while "trying to find the probation report" regarding defendant's original offense, then noted that "the facts as outlined by [that] report" indicated defendant "used a gun."

The court continued:  "And I don't want to talk about the charges in the plea bargain agreement.  You know what they are.  I don't want to mention that in open court, but this was for a change in the charges, and also for probation.  [¶]  Now, I realize that I can't consider that in sentencing him.  I have to sentence, if [defendant] is found in violation of probation, according to what he pled to, but the fact that a firearm was used

---

[1] It is not clear where defense counsel derived the indicated sentence from—it does not appear in the reporter's transcript for defendant's original sentencing at which he first received probation, nor elsewhere in the record to our knowledge.

and the way that the probation officer outlined the facts of this case, the first thing I did was to ensure my name is nowhere on it," apparently referring to defendant's plea agreement and change of plea.

The court recapped: "And I used this as a teaching lesson for [the prosecutor] to know that what I expect from both sides, whether it's the district attorney or defense attorney, is to alert me to issues like this."

The court then summarized: "As I said, because we are in open court, I'm not going to go further into the facts. No, I'm not inclined to give the low term." The parties then consulted off the record regarding a date for the *Vickers* hearing, and the court set that date.

The court held the *Vickers* hearing almost three weeks later, on July 29, 2024. The parties presented evidence regarding the alleged probation violations, the court found defendant violated his probation terms, declined to reinstate probation, and sentenced defendant to the midterm of three years on his plea offense. The evidence presented at the hearing included the probation officer's testimony that defendant "failed to comply with directives [that] he wasn't allowed to use the Internet" and that the violations, including defendant's "multiple" visits to sexually explicit Internet sites like OnlyFans, were evident on his phone. The probation officer described the sexually explicit online profiles and pages that defendant visited. Defendant admitted to the probation officer that "nobody else had access" to the device. He did not suggest he possessed or used his phone for work purposes.

At the hearing, the court expressly declined defense counsel's request to—with "stricter term[s]"—give defendant "another chance on probation." In addition to noting this was defendant's second proven probation violation, the court also found that this "violation corresponds to the charges he pled to, which was a lesser included offense as you can gather from what he was charged with. And I'm not considering that. I'm considering what he pled to."

## DISCUSSION

Defendant contends he is entitled to reversal of the trial court's probation revocation determination and remand for a new *Vickers* hearing before a different judge. Defendant asserts the trial court "clearly showed its bias by announcing," at the prehearing conference, "its concern over the original grant of probation."

Defendant forfeited his claim by raising it for the first time on appeal, despite almost three weeks passing between the judge's allegedly biased comments and the subsequent *Vickers* hearing. It is firmly established that a party "may not go to trial before a judge and gamble on a favorable result, and then assert for the first time on appeal that the judge was biased." (*People v. Rodriguez* (2014) 58 Cal.4th 587, 626.)

As noted above, the Legislature has provided a ready means to raise and resolve bias claims at the earliest opportunity. (Code Civ. Proc., § 170.1, subd. (a); see *People v. Scott* (1997) 15 Cal.4th 1188, 1206-1207 [defendant must seek disqualification " 'at the earliest practicable opportunity after discovery of the facts constituting the ground for disqualification' "].) The statutory disqualification mechanism is not limited to the judicial officer's subjective evaluation of his or her impartiality, though the officer can

7

grant a disqualification motion on that ground. (See Code Civ. Pro., § 170.1 subd. (a)(6)(A)(ii) [providing for disqualification if "[t]he judge believes there is a substantial doubt as to his or her capacity to be impartial"], or similarly under (i) ["The judge believes his or her recusal would further the interests of justice"].) The statute also provides for disqualification based on an objective standard, namely: "A person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial." (*Id.*, subd. (a)(1)(A)(iii).) The enactment provides for immediate writ review of the trial court's decision on a disqualification motion. (Code Civ. Proc., § 170.3, subd. (d).) The availability of writ relief bars appeal on bias grounds. (*People v. Brown* (1993) 6 Cal.4th 322, 333.)

The no-writ bar against statutory relief does not extend to the constitutional claim defendant asserts here. (See *People v. Brown*, *supra*, 6 Cal.4th at p. 334 [writ requirement does not bar "nonstatutory due process claims of judicial bias"].) A defendant "has a due process right to an impartial trial judge under the state and federal Constitutions." (*People v. Guerra* (2006) 37 Cal.4th 1067, 1111, overruled in part on another ground in *People v. Rundle* (2008) 43 Cal.4th 76, 151.) Nevertheless, forfeiture also applies to constitutional claims of bias. Thus, in *Guerra*, as here, "defense counsel was fully aware before and during trial of all the facts defendant now cites in support of his claim of judicial bias. But he never claimed during trial that the judge should recuse himself or that his constitutional rights were violated because of judicial bias. 'It is too late to raise the issue for the first time on appeal.' " (*Guerra*, at p. 1111; see also *United States v. Olano* (1993) 507 U.S. 725, 731 [" 'No procedural principle is more familiar to

8

this Court than that a constitutional right,' or a right of any other sort, 'may be forfeited in criminal . . . cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.' "].)

So it is here.  Defendant was present at the prehearing conference and had the same defense counsel at that hearing and the subsequent one weeks later.  There was ample time to assert bias, including by filing a disqualification motion or seeking writ review if necessary.  Nothing in the record suggests an objection on bias grounds would have been futile.  (Compare *People v. Sturm* (2006) 37 Cal.4th 1218, 1237; *People v. Gomez* (2018) 6 Cal.5th 243, 292.)  Consequently, "we deem the claim of judicial bias to be forfeited" (*People v. Johnson* (2018) 6 Cal.5th 541, 592) and do not pass on " 'whether the trial judge's conduct left something to be desired, or even whether some comments would have been better left unsaid.' "  (*People v. Snow* (2003) 30 Cal.4th 43, 78.)

**DISPOSITION**

The trial court's probation revocation decision is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____
J.

We concur:


RAMIREZ _____
P. J.


CODRINGTON _____
J.

9