Filed 3/16/15  Sanai v. The Irvine Co. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| CYRUS M. SANAI, | B253432 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC235671) |
| v. | |
| THE IRVINE COMPANY, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, K. Brazile, Judge.  Reversed with directions.

Cyrus Sanai, in pro. per., for Plaintiff and Appellant.

Call & Jensen, David R. Sugden and Melinda Evans, for Defendant and Respondent, The Irvine Company.

In *Sanai v. Saltz* (2009) 170 Cal.App.4th 746 (*Sanai 2009*) we reversed the trial court's orders granting judgment on the pleadings with respect to Cyrus M. Sanai's causes of action under Civil Code section 1785.25 (part of the California Consumer Credit Reporting Agencies Act) and title 15 United States Code section 1681s-2(b) (15 U.S.C. § 1681s-2) (part of the federal Fair Credit Reporting Act) against Harvey A. Saltz and First Advantage Corporation, affirmed the order granting judgment on the pleadings with respect to Mr. Sanai's six common law tort causes of action, and remanded the case to permit Mr. Sanai to amend his federal cause of action (*Sanai 2009*, at p. 770) and for further proceedings "not inconsistent this opinion." (*Id.* at p. 784.) On remand, without first seeking leave of court, Mr. Sanai filed an amended complaint that named as defendants not only Mr. Saltz and First Advantage but also The Irvine Company and included, in addition to the two statutory credit reporting causes of action addressed in *Sanai 2009*, claims against all defendants for extortion and unfair business practices.[1]

After an unsuccessful effort to strike Mr. Sanai's new pleading under Code of Civil Procedure section 425.16[2] (see *Sanai v. Saltz* (Sept. 16, 2010, B219963) [nonpub. opn.] (*Sanai 2010*)), and several years of delay caused by a motion to declare Mr. Sanai a vexatious litigant, which the trial grant granted and we reversed (see *Sanai v. Saltz* (March 20, 2013, B232770) [nonpub. opn.] (*Sanai 2013*)), in June 2013 The Irvine Company moved pursuant to sections 435 and 436 to strike the pleading on the ground it had added a new party and new causes of action without prior judicial permission. The trial court granted the motion without leave to amend, ruling our decision in *Sanai 2009*

---

[1] A new fifth cause of action in the amended complaint sought to vacate as void or voidable awards to the defendants earlier in the proceedings of statutory damages/sanctions of $500 pursuant to Code of Civil Procedure section 724.050, subdivision (e), and attorney fees of $50,501.25 pursuant to Code of Civil Procedure section 724.080. The trial court sustained without leave to amend a demurrer to this cause of action in October 2009. It is not at issue in this appeal.

[2] Statutory references are to this code unless otherwise indicated.

did not authorize Mr. Sanai to add new parties to the lawsuit without leave of court.  We agree with the trial court's interpretation of *Sanai 2009* but reverse its order (and the subsequently entered dismissal of The Irvine Company) to the extent it barred Mr. Sanai from moving for leave to add The Irvine Company as a party to the litigation or to include additional causes of action to his lawsuit.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *Mr. Sanai's Initial Complaint and the Subsequent Void Trial Court Proceedings*

Mr. Sanai originally sued The U.D. Registry, Inc. (UDR)[3] and Mr. Saltz, its owner, in September 2000 for several torts and for violation of statutes regulating consumer credit reporting agencies based on UDR's negative credit reports following a dispute between Mr. Sanai and his landlord over the amount of rent due for a Newport Beach apartment Mr. Sanai had leased.  After answering the complaint, UDR filed a special motion to strike under section 425.16, asserting Mr. Sanai's lawsuit was brought in retaliation for UDR's exercise of its constitutional right to petition or engage in speech related to a matter in litigation.  The trial court denied the motion, and we affirmed in an order filed March 21, 2002.  (*Sanai v. Saltz et al.* (Mar. 21, 2002, B147392) [nonpub. opn.].)

While the appeal from the denial of UDR's special motion to strike was pending in this court from January 16, 2001 to May 24, 2002, the litigation proceeded in the trial court, which issued a number of orders, at least at the outset without any formal objection by either party, determining pleading issues and discovery disputes and ultimately resolving against Mr. Sanai all of the substantive issues raised by his lawsuit.  Among the

---

[3]  UDR was acquired by First Advantage Corporation in April 2004.  On April 21, 2005 we granted Mr. Sanai's unopposed motions to substitute First Advantage Corporation for UDR in the appeal then pending before us.  First Advantage Corporation thereafter actively participated in the litigation and was expressly identified as UDR's successor in interest.  (See, e.g., *Sanai 2009, supra,* 170 Cal.App.4th at p. 751.)  First Advantage Corporation was itself subsequently acquired, although the parties disagree whether by Corelogic, Inc. or its subsidiary Corelogic US, Inc.

3

prejudgment orders was a ruling by the trial court that Mr. Sanai's landlord was a necessary and indispensable party to the action. As a result, Mr. Sanai filed a first amended complaint and thereafter a second amended complaint adding the owners of the apartment Mr. Sanai had leased (Irvine Apartment Communities, L.P., Irvine Apartment Communities, LLC, and The Irvine Company) as defendants.

After entry of judgment against him and while various postjudgment motions for costs and fees were pending, Mr. Sanai moved in the trial court, pursuant to section 473, subdivision (d), to set aside void orders and judgment, asserting the trial court lacked jurisdiction to make any orders denying him relief or granting relief to the defendants during the pendency of the appeal from the denial of UDR's special motion to strike. The trial court denied the motion. In *Sanai v. Saltz* (June 28, 2005, B174924/B170618) (*Sanai 2005*), a nonpublished opinion on rehearing immediately following the Supreme Court's decision in *Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, we reversed the order denying Mr. Sanai's motion to set aside void judgment and orders; vacated the judgment entered against Mr. Sanai; reversed all postjudgment orders awarding and denying costs and attorney fees; and remanded the matter to the trial court with directions to vacate all orders entered after January 16, 2001, the date on which UDR and Mr. Saltz had filed their notices of appeal from the denial of UDR's special motion to strike Mr. Sanai's complaint, and to conduct further proceedings based on the state of the pleadings on January 16, 2001.

2. *Judgment on the Pleadings and Our Partial Reversal in* Sanai 2009

As of January 16, 2001, "Mr. Sanai's original complaint, the operative pleading, alleged three statutory causes of action—violations of the FCRA [Fair Credit Reporting Act] (15 U.S.C. § 1681s-2) (the eighth cause of action) and portions of the state Consumer Credit Reporting Agencies Act (Civ. Code, §§ 1781.16, subd. (f), 1785.25) (the seventh and ninth causes of action)—and six common law tort actions based on UDR's negative reports to a credit bureau concerning Mr. Sanai's credit status relating to the dispute over his rent." (*Sanai 2009, supra*, 170 Cal.App.4th at p. 759.) Only UDR

4

and Mr. Saltz were named as defendants. Mr. Sanai thereafter filed several motions to amend his complaint. "In general, Mr. Sinai sought leave to allege new and/or different facts underlying his claims, [fn. omitted] to delete four of the common law claims and replace them with a more general negligence claim, to delete the Consumer Credit Reporting Agencies Act claims as initially pleaded and reallege one such claim in somewhat different form and to add a new cause of action for violating Business and Professions Code section 17200." (*Sanai 2009*, at p. 760.) Those motions were denied by the trial court, which explained in substantially similar language as to each motion that Mr. Sanai appeared to be attempting to plead around defects in his original complaint and had failed to present evidence that factual allegations in the earlier pleading contradicted by the proposed new pleadings were the result of mistake or inadvertence, as the court had required. (*Ibid.*)

In April 2006 First Advantage Corporation, as successor in interest to UDR, and Mr. Saltz moved for judgment on the pleadings directed to the original complaint contending Mr. Sanai's federal claim should be dismissed because the statute upon which he relied did not provide for a private cause of action and his claim for violation of Civil Code section 1785.25 and state tort causes of action were preempted by federal law. The trial court granted the motion: The court held there was no private right of action for violating 15 U.S.C. § 1681s-2(a)—a point Mr. Sanai conceded—and Mr. Sanai had failed to state a cause of action under 15 U.S.C. § 1681s-2(b). The court gave Mr. Sanai leave to amend the subdivision 2(b) claim, but required, as a condition to allowing the amendment, that Mr. Sanai produce "admissible evidence" to support any new factual allegations in his pleading. When Mr. Sanai failed to present such evidence, the court granted the motion as to the federal claim without leave to amend. The court also ruled the state statutory and common law causes of action were preempted.

We reversed in part, ruling with respect to the federal claim that the trial court had abused its discretion in imposing unduly restrictive conditions on Mr. Sanai's right to amend his complaint and his proposed amendment to the federal cause of action pleaded

5

a viable cause of action.  (*Sanai 2009, supra*, 170 Cal.App.4th at pp. 767-770.)[4]  We also held the court had erred in concluding Mr. Sanai's claim under Civil Code section 1785.25, subdivision (a), was preempted, relying on the analysis and holding of *Gorman v. Wolpoff & Abramson, LLP* (9th Cir. 2009) 552 F.3d 1008, superseded in October 2009 by amended opinion 584 F.3d 1147, a case decided by the Ninth Circuit well after the trial court's order.  (*Sanai 2009*, at p. 776.)  We agreed with the trial court, however, that Mr. Sanai's common law claims were preempted.  (*Id*. at pp. 773-774.)  In remanding the case for further proceedings, we noted, in light of our holdings, Mr. Sanai's challenges to the trial court's orders denying his earlier requests for leave to amend the complaint were moot.  (*Id.* at p. 783, fn. 26.)

   3. *The First Amended Supplemental Verified Complaint, the Special Motion To Strike and the Vexatious Litigant Proceedings*

   Our remittitur in *Sanai 2009* issued on May 5, 2009, following denial by the Supreme Court of a petition for review filed by Mr. Saltz and First Advantage.  On June 4, 2009, without seeking leave of court to add new parties or additional causes of action, Mr. Sanai filed a 25-page first amended supplemental verified complaint.  The first two causes of action were revised versions of Mr. Sanai's statutory claims that had been revived by *Sanai 2009*:  breach of various provisions of the California Consumer Credit Reporting Agencies Act (against Mr. Saltz and First Advantage) and an "alternative complaint" for violation of the Fair Credit Reporting Act against not only Mr. Saltz and First Advantage but also The Irvine Company, which, as discussed, had

---

[4]      As we explained, "The trial court appears to have had good reason to be hesitant to accept new factual allegations from Mr. Sanai, at least to the extent they were inconsistent with prior allegations (as, for example, seems to have been the case with respect to allegations regarding the timing of Mr. Sanai's purported acceptance of the offer for a one-year lease at $1,410 per month); but it went too far when it demanded the production of admissible evidence, specifically excluding Mr. Sanai's own testimony, to support the proposed amendment to the complaint while at the same time preventing Mr. Sanai from conducting any discovery."  (*Sanai 2009, supra*, 170 Cal.App.4th at p. 769.)

been made a party to the lawsuit during the void proceedings in the trial court preceding our decision in *Sanai 2005*.[5] Mr. Sanai's first amended supplemental verified complaint also included a claim for extortion against Mr. Saltz, First Advantage and The Irvine Company, as well as a cause of action for unfair business practices (Bus. & Prof. Code, § 17200 et seq.) against First Advantage and The Irvine Company. Finally, Mr. Sanai added a fifth cause of action seeking to vacate as void or voidable all orders to pay money that had previously been entered in the action against Mr. Sanai by Judge Terry Green.[6]

On August 3, 2009—60 days after Mr. Sanai filed the first amended supplemental verified complaint (cf. § 426.16, subd. (f)) and without first answering, demurring or otherwise responding to the first four causes of action in the new pleading—Mr. Saltz, First Advantage and The Irving Company moved pursuant to section 425.16 to strike those claims, arguing each arose from defendants' constitutionally protected speech or petitioning activity and Mr. Sanai could not show through admissible evidence the requisite probability of success. (See, e.g., *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 819-820 ["The analysis of an anti-SLAPP motion thus involves two steps. 'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one "arising from" protected activity. [Citation.] If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim.'"].) With respect to the second issue—Mr. Sanai's likelihood of success—one of the arguments defendants' proffered

---

[5] In fact, during those trial court proceedings The Irvine Company and several related entities not only had been named as defendants but also had filed a cross-complaint (albeit through UDR as its assignee) to collect the unpaid rent Mr. Sanai allegedly owed. Prior to trial on this claim, Mr. Sanai made a statutory tender of the full amount sought, which was accepted; and the cross-complaint was dismissed. (See *Sanai 2009, supra*, 170 Cal.App.4th at pp. 754-756.)

[6] As noted above, the trial court sustained without leave to amend a demurrer to the fifth cause of action in October 2009; and it is not at issue here.

was that the entire pleading was inconsistent with the remittitur in *Sanai 2009*, which they asserted expressly limited Mr. Sanai to pursuing his claim under Civil Code section 1785.25, subdivision (a), "as is," and allowed amendment only to his federal statutory claim. Because Mr. Sanai had added new claims and a new party (The Irvine Company), "the entire complaint must be dismissed as violative of the Appellate Court's order." Numerous additional arguments directed to the merits of the first amended supplemental verified complaint were pressed: In all, the moving papers included nearly 50 pages of argument in the memorandum of points and authorities, 70 pages of declarations and three volumes of exhibits directed to establishing Mr. Sanai could not show any likelihood of success on his claims.

The trial court denied the motion in an order filed September 28, 2009, concluding defendants had failed to sustain their first-prong burden of showing Mr. Sanai's claims were based on protected speech or petitioning activity within the meaning of section 425.16. Although it did not deal with the second-prong, merits-related arguments advanced by defendants, the trial court observed: "Moving parties have raised many other issues, such as plaintiff has exceed the scope of permission to amend or has tried to reargue matters that have been decided against him or he can't be trusted. All of these matters can be raised by way of demurrer or motions to strike. They are not matters the court can consider in ruling upon a special motion to strike."

Mr. Saltz, First Advantage and The Irvine Company appealed the trial court's denial of their motion, which automatically stayed all further trial court proceedings. (*Varian Medical Systems, Inc. v. Delfino, supra*, 35 Cal.4th at p. 186.) We affirmed the trial court's order in *Sanai 2010*, a nonpublished opinion filed in September 2010, holding, "Although Mr. Sanai's pleading arguably includes collateral or incidental references to the Saltz parties' litigation-related statements or conduct, we agree with the trial court Mr. Sanai's claims do not arise from the Saltz parties' protected speech or petitioning activity in connection with a public issue within the meaning of section 426.16, subdivision (e)."

At the conclusion of their unsuccessful efforts to strike Mr. Sanai's first amended supplemental verified complaint under the anti-SLAPP statutes, Mr. Saltz, First Advantage and The Irvine Company moved to declare Mr. Sanai a vexatious litigant and to require him to post security under section 391.3. The motion was accompanied by a 63-page supporting memorandum, several declarations and multiple volumes of exhibits intended, in part, to show there was not a reasonable probability Mr. Sanai would prevail on the merits in the litigation. (See § 391.1.) Briefing and argument on the motion in the trial court and on appeal extended for nearly two and one-half years. Pursuant to section 391.6, all other proceedings in the trial court were stayed during that extended period.

The trial court accepted some of the moving parties' arguments and rejected others, but ultimately determined Mr. Sanai was a vexatious litigant and prohibited him, pursuant to section 391.7, from filing in propria persona any new litigation in the courts of this state without first obtaining leave of the presiding judge or justice of the court where the litigation was proposed to be filed. (A ruling on the request to require Mr. Sanai to post security in the instant litigation was deferred.) We reversed that order in *Sanai 2013*, concluding the trial court had applied the vexatious litigant designation beyond the limits set by the applicable statutory scheme. Our remittitur issued on May 22, 2013 and was filed by the clerk of the superior court on May 30, 2013.

4. *The Irvine Company's Motion To Strike*

The Irvine Company[7] and Mr. Saltz jointly filed a verified answer to the first amended supplemental verified complaint on May 24, 2013 (that is, within the 10 days specified by section 391.6 for responding to a pleading after a motion to declare the plaintiff a vexatious litigant has been denied). On May 29, 2013 First Advantage and on

---

[7]    The caption and paragraph 5 of Mr. Sanai's first amended supplemental verified complaint identified "The Irvine Company" as the defendant, and paragraph 5 alleged it was "a corporation doing business in California." The May 24, 2013 answer was filed on behalf of "The Irvine Company, LLC." In answer to paragraph 5 of the amended complaint, defendants "admit[ted] that The Irvine Company is a limited liability company doing business in California."

9

June 17, 2013 Mr. Saltz and The Irvine Company each filed separate motions to strike the first amended supplemental verified complaint, pursuant to sections 435 and 436 and the court's inherent authority to strike an improper pleading, contending, as they had four years earlier in their anti-SLAPP motion, that the pleading impermissibly added new causes of action and a new party without leave to amend and in direct contravention of court orders. The Irvine Company's motion sought, in the alternative, to strike all references to it in the first cause of action under the California Consumer Credit Reporting Agencies Act (in which it was not named a defendant), as well as the second, third and fourth causes of action in their entirety.[8]

As discussed in more detail below, after the motions to strike were filed, Mr. Sanai moved to disqualify Judge Kevin Brazile from continuing to preside over the case (the fifth such disqualification motion directed to Judge Brazile). The court struck the statement of disqualification, finding it disclosed no legal grounds for disqualification.

Mr. Sanai thereafter filed what he labeled a "preliminary opposition" to the motion to strike. Mr. Sanai argued the motion was untimely and barred by law of the case (that is, by language in *Sanai 2009*), requiring no further substantive response. Although acknowledging section 436 authorized the court "at any time in its discretion, and upon such terms as it deems proper," to "[s]trike out all or any part of any pleading not drawn or filed in conformity with the laws of this state, a court rule, or an order of the court," Mr. Sanai insisted such action could only be taken after issuance of an order to cause. Mr. Sanai purported to reserve his right to file a response on the merits until such time as an order to show cause was issued, limiting his preliminary opposition to the procedural history of the case and a discussion of the scope of the court's powers.

The Irvine Company, now represented by new counsel, filed a reply in support of its motion, arguing the motion was timely under section 438, subdivision (i)(1)(A), governing motions to strike following the granting of a motion for judgment on the

---

[8] Although The Irvine Company, LLC answered the complaint, the motion to strike was filed on behalf of The Irvine Company.

10

pleadings with leave to amend.[9] (The Irvine Company also argued the preliminary opposition filed by Mr. Sanai should be disregarded as untimely.)

Following oral argument on December 4, 2013 at which all counsel, including Mr. Sanai, addressed the merits of the motion to strike, the court adopted its tentative ruling and struck The Irvine Company as a defendant from the first amended supplemental verified complaint. The written minute order, after citing the court's authority under section 436, explained The Irvine Company had not been named a defendant in the original complaint (that is, the complaint as it stood as of January 16, 2001) and was added by Mr. Sanai as a defendant in his first amended supplemental verified complaint following issuance of the remittitur in *Sanai 2009*. The court then ruled, "Plaintiff's right to amend was to be consistent with the Court of Appeal decision. Plaintiff did not have leave to add new parties. Thus, the motion to strike [The Irvine Company] as a Defendant from the [first amended supplemental verified complaint] is GRANTED, without leave to amend."

Following the order granting the motion to strike, Mr. Sanai filed a request to dismiss with prejudice all causes of action asserted against The Irvine Company only, "solely to expedite appeal." The notice of appeal identified the December 4, 2013 order granting the motion to strike and all other nonappealable orders entered prior to December 27, 2013 (the date of the request for dismissal).

## CONTENTIONS

Mr. Sanai contends the trial court erred in considering an untimely motion to strike and, having done so, in both finding the first amended supplemental verified complaint was outside the scope of the remand order in *Sanai 2009* and granting the motion

---

[9] Counsel identified its client in the reply memorandum as "The Irvine Company LLC, dba the Irvine Company" and explained "'The Irvine Company LLC' is the actual name of the entity that does business in California under the registered fictitious business name the 'Irvine Company.'" With the reply memorandum counsel submitted a request for judicial notice of an October 1, 2013 Westlaw printout of the fictitious business name record reflecting that information.

11

"without leave to amend," thereby precluding him from seeking permission from the court to add The Irvine Company to the lawsuit. He also contends the court erred in allowing The Irvine Company LLC to appear in the action in place of The Irvine Company and Judge Brazile's continued participation in the lawsuit and decision on the motion to strike violated his right to due process.

## DISCUSSION

### 1. *The Trial Court Properly Considered the Motion To Strike*

Section 436 authorizes a trial court to strike improper matter "upon a motion made pursuant to Section 435, or at any time in its discretion." That is precisely what occurred here. The Irvine Company's motion was expressly based on section 435, even if it was not filed within the time allowed to respond to the first amended supplemental verified complaint. (See § 435, subd. (b)(1).) Mr. Sanai had ample notice the propriety of adding The Irvine Company as a party in his amended complaint was before the court, and he addressed the merits of the issue—that is, the scope of the amendments permitted by *Sanai 2009*—both in his so-called preliminary opposition to the motion and even more extensively at oral argument. Nothing more was required. (See *Hale v. Laden* (1986) 178 Cal.App.3d 668, 673 [affirming trial court's order pursuant to § 436 striking improper cross-complaint for equitable indemnity; "[t]his ministerial act could be done without notice"]; see also *Lodi v. Lodi* (1985) 173 Cal.App.3d 628, 630-631 [court properly struck on its own motion a complaint that failed to state a cause of action at hearing noticed by plaintiff for entry of defendant's default]; see generally *Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1108 [court may reconsider a prior interim ruling on its own motion if parties are given an opportunity to brief the issue and a hearing is held].)

### 2. *Leave of Court Was Required Before Mr. Sanai Could Add New Parties or New Causes of Action Following Our Remand in Sanai 2009*

Mr. Sanai and The Irvine Company appear to agree, at least in the abstract, on the general principles that apply to the permissible scope of an amended pleading: Once the time permitted by section 472 for amending a pleading by right has elapsed, a party seeking to file an amended pleading must obtain leave of court. (§§ 473, subd. (a)(1)

12

[after notice to adverse party, court may allow, "in furtherance of justice, and on any terms as may be proper," an amendment to any pleading], 576 ["[a]ny judge, at any time . . . in the furtherance of justice, and upon such terms as may be proper, may allow the amendment of any pleading . . ."].)  The court's discretion will usually be exercised liberally to permit amendment of the pleadings.  (See *Nestle v. Santa Monica* (1972) 6 Cal.3d 920, 939.)  "Indeed, 'it is a rare case in which "a court will be justified in refusing a party leave to amend his pleading so that he may properly present his case."'"  (*Douglas v. Superior Court* (1989) 215 Cal.App.3d 155, 158.)

Although a formal noticed motion seeking leave to amend is required under many circumstances, when a motion for judgment on the pleadings is granted, the court may grant leave to the party opposing the motion to amend the pleading that was challenged.  (§ 438, subd. (h)(1).)  The scope of amendment permitted is within the discretion of the court.  As is true in the closely analogous situation of an order sustaining a demurrer with leave to amend, which may be granted "upon any terms as may be just" (see § 472a, subd. (c)), the court may properly allow the plaintiff not only to attempt to correct deficiencies in the causes of action as to which the motion for judgment on the pleadings was granted but also to raise claims unrelated to those pleaded in the earlier complaint. Absent an express statement of leave by the trial court to add entirely new causes of action or parties, however, when a motion for judgment on the pleadings has been granted (or demurrer sustained) with leave to amend, the order is properly construed as permission to amend only the specific causes of action as to which the motion was granted (see *People ex rel. Dept. Pub. Wks. v. Clausen* (1967) 248 Cal.App.2d 770, 785; see also *Taliaferro v. Davis* (1963) 220 Cal.App.2d 793, 794-795 [order granting permission to amend a complaint does not authorize addition of a new party]).

Here, the trial court granted Mr. Sanai leave to amend his statutory claim under the federal Fair Credit Reporting Act.  However, it imposed unduly restrictive conditions on his right to do so and, when he failed to satisfy those conditions, granted judgment on the pleadings on that cause of action.  As discussed, we reversed that order in *Sanai 2009,*

13

*supra*, 170 Cal.App.4th 746, holding "the trial court is simply without power to demand, as the condition for leave to amend, that a party present admissible evidence sufficient to withstand summary judgment," and remanded to permit Mr. Sanai to amend his federal cause of action. (*Id.* at p. 770 & fn. 17.) Neither the trial court's improper conditional order granting leave to amend nor our decision in *Sanai 2009* reversing that order and allowing amendment of the Fair Credit Reporting Act claim gave Mr. Sanai permission to add a new party to his complaint or to attempt to plead new or additional causes of action.

In the trial court Mr. Sanai argued, by remanding for further proceedings "not inconsistent with this opinion" (*Sanai 2009, supra*, 170 Cal.App.4th at p. 784) after concluding, as we did in footnote 26, that "any further issues with respect to the trial court's orders denying leave to amend the complaint . . . are moot," we necessarily gave him "the right to amend the complaint, period"—that is, "complete freedom to amend my complaint to state new or better facts or causes of action." (In his appellate briefing Mr. Sanai prudently states he would not presume to tell us what the terms of our *Sanai 2009* remand were.) That argument misconstrues our note regarding mootness, which was addressed not only to his challenge to the trial court's prior orders denying leave to amend but also to his appeal of the trial court's order granting a stay of discovery pending its determination of the motion for judgment on the pleadings. (See *id.* at p. 783, fn. 26.) Because we held Mr. Sanai could amend his federal cause of action and also held all of his state law causes of action other than for violation of Civil Code section 1785.25 were preempted, whether or not those earlier trial court rulings were correct could have no further significance in the litigation—the very definition of mootness. (See, e.g., *MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 214 ["[a] case is moot when the decision of the reviewing court 'can have no practical impact or provide the parties effectual relief'"].) We did not conclude the orders were wrong; neither did we uphold them. But by no means did we extend to Mr. Sanai an open invitation to file an amended complaint adding new parties or additional causes of action.

14

Accordingly, the trial court acted well within its discretion in striking The Irvine Company as a defendant from the first amended supplemental verified complaint.[10]

3. *The Trial Court Erred in Granting the Motion To Strike With Prejudice*

Although Mr. Sanai has read our remand for further proceedings too broadly, in striking The Irvine Company as a defendant without leave to amend, thereby precluding Mr. Sanai from seeking permission from the court to add The Irvine Company to the lawsuit, the trial court gave it an unnecessarily cramped interpretation. To be sure, the decision whether to grant leave to amend is "entrusted to the sound discretion of the trial court." (*Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 242; accord, *Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 296.) That discretion is properly exercised when newly proposed causes of action are legally insufficient and any amendment, therefore, futile. (*Foxborough v. Van Atta* (1994) 26 Cal.App.4th 217, 230-231 ["[o]f course, if the proposed amendment fails to state a cause of action, it is proper to deny leave to amend"]; see *Sandler v. Sanchez* (2012) 206 Cal.App.4th 1431, 1437 [leave to amend should not be granted when amendment would be futile]; *Vaillette v. Fireman's Fund Ins. Co.* (1993) 18 Cal.App.4th 680, 685 [same].) It may well be, as The Irvine Company argues, that any claim Mr. Sanai may have against it is barred by the governing statute of limitations or is precluded

---

[10] There is no merit to Mr. Sanai's additional argument the order striking The Irvine Company as a defendant should be reversed because the entity's current counsel filed papers on behalf of "The Irvine Company LLC, dba Irvine Company" without an adequate showing that it is the successor in interest to "The Irvine Company," the party named in his pleading and that Mr. Sanai asserts is the remaining successor general partner of a partnership called Irvine Apartment Management Company. Because the trial court acted on its own motion pursuant to section 436, neither the defendant's correct name nor the identity of the parties who urged the court to strike it from the pleading is relevant to this appeal. In any event, as previously noted, the original (untimely) motion to strike pursuant to section 435 was filed on behalf of The Irvine Company. (See note 8, above.)

15

as a matter of law because of federal preemption or for some other reason.[11] If so, any further leave to amend should be denied. But that was not the basis for the trial court's order. Instead, the court apparently believed our remittitur prohibited further proceedings on any cause of action other than the two statutory claims at issue in *Sanai 2009*. (See *Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 701 [on remand lower court is confined to scope of remittitur and is precluded from permitting amendments to pleadings or filing of supplemental pleadings outside the scope of remittitur].) That was error.[12]

_____

[11] In its motion to strike The Irvine Company argued the first amended supplemental verified complaint established on its face that Mr. Sanai's claims against it, which were based on events that had allegedly occurred in 1999 and 2000, were time-barred. (See *Hawkins v. Pacific Coast Bldg. Products, Inc.* (2004) 124 Cal.App.4th 1497, 1503 ["[a]s a general rule, 'an amended complaint that adds a new defendant does *not* relate back to the date of filing the original complaint and the statute of limitations is applied as of the date the amended complaint is filed, not the date the original complaint is filed'"].) As discussed, Mr. Sanai did not respond to this argument in the trial court, relying solely on his assertion the trial court could not properly consider the untimely motion to strike. If Mr. Sanai elects to move for leave to amend his current pleading to include The Irvine Company as a party, that motion should address the statute of limitation issue and his proposed amended pleading should properly allege facts supporting application of the doctrines of delayed discovery or equitable tolling.

[12] The court's mistaken belief as to the scope of the remittitur was reinforced by defense counsel. Arguing at the joint hearing on the motions to strike filed by Harvey Saltz and The Irvine Company, Michael Saltz stated, "the appellate court specifically said that Sanai did not have leave to amend the [Civil Code section] 1785.25(a) claim. . . . They said that the decision to deny Sanai leave to amend to change his factual allegations that were inconsistent, that was upheld." Neither statement is accurate. As to the first, we held the cause of action asserting a violation of Civil Code section 1785.5, subdivision (a), was sufficient as pleaded by Mr. Sanai. Because no amendment was necessary, we had no occasion to address whether further amendment was permissible. As to the second, although we confirmed a trial court's discretion to deny leave to amend when the proposed amendment omits or contradicts harmful facts from a prior pleading unless an adequate justification is proffered (*Sanai 2009, supra*, 170 Cal.App.4th at p. 768), we expressly declined to determine whether the trial court had properly applied that general principle in any ruling other than with respect to the cause of action under the federal Fair Credit Reporting Act. (*Id.* at p. 783, fn. 26.)

16

In finding Mr. Sanai's challenge to the court's prior rulings on his motions for leave to amend moot and remanding for further proceedings, we left it to the trial court to decide anew, in light of our ruling on the scope of federal preemption, whether any further motion for leave to amend should be granted. Although we certainly recognized the trial court's right in ruling on any such motion to consider its "experience with the parties and the manner in which the litigation has been conducted, which spawned its 'sensitiv[ity] to sham pleadings, where factual theories are changed or abandoned to fit tentative rulings'" (*Sanai 2009, supra*, 170 Cal.App.4th at p. 768), nothing in our opinion authorized the trial court's edict completely barring any attempt by Mr. Sanai to supplement his two statutory claims or otherwise to expand the scope of his lawsuit. To that extent (and only to that extent), the order granting the motion to strike "without leave to amend" is reversed.

4. *Judge Brazile's Failure To Disqualify Himself Did Not Violate Mr. Sanai's Due Process Rights*

a. *Mr. Sanai's disqualification motions*

Following issuance and filing of the remittitur in *Sanai 2013* (the vexatious litigant appeal), Mr. Sanai filed a disqualification statement (affidavit of prejudice) directed to Judge Brazile under section 170.6. Although Judge Brazile initially accepted the statement, following several proceedings before different superior court judges, that decision was reversed; and Judge Brazile continued to preside over the matter. On August 29, 2013 Mr. Sanai sought review in this court by a petition for writ of mandate. (See § 170.3, subd. (d) ["[t]he determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate from the appropriate court of appeal"].) We ordered briefing on the propriety of the procedures followed by the superior court and thereafter, on October 30, 2013, summarily denied the petition.

On November 22, 2013 Mr. Sanai once again moved, this time pursuant to sections 170.1 and 170.3 and the due process clause of the Fourteenth Amendment, to disqualify Judge Brazile from continuing to preside over the case arguing no reasonable

17

observer would be free from doubt about his impartiality and contending there was a constitutionally forbidden probability of bias, citing *Caperton v. A.T. Massey Coal Co.* (2009) 556 U.S. 868 [129 S.Ct. 2252,173 L.Ed.2d 1208] (*Caperton*) and *People v. Freeman* (2010) 47 Cal.4th 993 (*Freeman*).[13] Mr. Sanai's motion asserted the existence of an ongoing conspiracy (or "pattern and practice"), beginning in 2005, among Frederick Bennett, who served as counsel to the court in connection with Mr. Sanai's repeated disqualification motions and related writ proceedings; former Judge (now Justice) Elizabeth Grimes, who had presided over early phases of Mr. Sanai's lawsuit against Mr. Saltz, First Advantage and The Irvine Company; Department One of the Los Angeles Superior Court; Michael Saltz, counsel for the defendants in this action; and other attorneys in litigation involving Mr. Sanai as an attorney or party. The conspiracy was allegedly designed, at least in part, to discredit Mr. Sanai in order to protect the reputation of Judge Grimes and purportedly has included improper ex parte communications, subornation of perjury by court staff, destruction of documents and falsification of proofs of service of orders. Judge Brazile, who was assigned to the case in 2010 following Mr. Sanai's disqualification of another bench officer, was described as "a former county counsel and colleague of Bennett." The motion critiqued various procedural difficulties Mr. Sanai had encountered in connection with his prior efforts to disqualify Judge Brazile and accused Judge Brazile of making inaccurate statements in response to those efforts. In summarizing his grounds for recusal, Mr. Sanai stated, "The Superior Court's own lawyer, and Judge Brazile's former colleague, has been directly involved in efforts to injure me since 2005. . . . Bennett has had extensive interaction with Judge Brazile during this litigation. No one would think that this interaction would not influence Judge Brazile and everyone would question his impartiality. . . . Judge Brazile engaged in, and

---

[13] Mr. Sanai's November 22, 2013 statement of disqualification was directed not only to Judge Brazile but also to all other judges of the Los Angeles Superior Court. In addition, Mr. Sanai contemporaneously filed a renewed affidavit of prejudice to disqualify Judge Brazile under section 170.6.

18

has the right to engage in the future in, interactions and communications with Bennett and Department [One] without me being give notice or an opportunity to be heard."

The court struck the statement of disqualification on November 25, 2013, finding that, on its face, it disclosed no legal basis for disqualification. (Among its grounds for striking the statement, the court observed that Mr. Sanai had not provided sufficient admissible evidence or documentation: "The statement of disqualification cannot be based upon information and belief, hearsay, or other inadmissible evidence.") In addition, the court's order stated, "Based upon the record in this case it appears that Plaintiff has a pattern of filing impermissible repetitive statements of disqualification. Accordingly, Plaintiff is ordered to file no further statements of disqualification based upon facts or events occurring prior to the filing of this latest statement of disqualification. Violations of this order may result in the imposition of sanctions."

We summarily denied Mr. Sanai's petition for writ of mandate challenging that order on December 12, 2013. However, with respect to the superior court's apparent limitation on Mr. Sanai's ability to file further disqualification motions, in denying a motion to disqualify Judge Brazile that was filed directly in this court in November 2014, we ruled, "To the extent appellant Cyrus M. Sanai can assert in good faith grounds for disqualification based at least in part on new facts or information being presented 'at the earliest practicable opportunity after discovery' (see Code Civ. Proc., § 170, subd. (c)(1)), the statement of disqualification should be filed in the superior court."

b. *Statutory grounds for disqualification and the parties' due process right to a fair trial in a fair tribunal*

i. Statutory judicial disqualification motions

Section 170.1 specifies the statutory bases for disqualifying judges of the superior courts.[14] Pursuant to section 170.1, subdivision (a)(6), a judge is disqualified if the judge believes "there is a substantial doubt as to his or her capacity to be impartial" (*id*.,

---

[14] Section 170.5 defines "judge" for purposes of section 170 to 170.5 as "judges of the superior courts, and court commissioners and referees."

19

subd. (a)(6)(ii)) or "[a] person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial" (*id.*, subd. (a)(6)(iii)). Sections 170.3 and 170.4 outline the procedures for determining a motion to disqualify a judge and the effect of the disqualification.

Denial of a motion to disqualify a judge is not an appealable order. Section 170.3, subdivision (d), provides, "The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate from the appropriate court of appeal . . . ." (See *People v. Brown* (1993) 6 Cal.4th 322, 335 ["the denial of a *statutory* judicial disqualification motion is not subject to interlocutory appeal; instead, all litigants who seek to challenge denial of a statutory judicial disqualification motion are relegated to writ review as described in section 170.3(d)"]; see also *Freeman, supra,* 47 Cal.4th at p. 1000 ["'[u]nder our statutory scheme, a petition for writ of mandate is the *exclusive* method of obtaining review of a denial of a judicial disqualification motion'"]; *Roth v. Parker* (1997) 57 Cal.App.4th 542, 548 [same].) Moreover, unlike most pretrial writ petitions, summary denial of a petition for writ of mandate to review the ruling on a disqualification motion "is on the merits and constitutes law of the case." (*Frisk v. Superior Court* (2011) 200 Cal.App.4th 402, 415; see *Leone v. Medical Board* (2000) 22 Cal.4th 660, 670.)

In *Leone* the Supreme Court distinguished "writ petitions challenging pretrial superior court rulings that could also be reviewed on appeal from the judgment ultimately entered in the action" from "situations in which a writ petition was the only authorized mode of appellate review." As to the former, the Court explained, "'When the court denies a writ petition without issuing an alternative writ, *it does not take jurisdiction over the case*; it does not give the legal issue full plenary review.'" (*Leone v. Medical Board, supra,* 22 Cal.4th at pp. 669-670.) However, when a writ petition constitutes the exclusive means of obtaining appellate review of an order, "an appellate court must judge the petition on its procedural and substantive merits, and a summary denial of the petition is necessarily on the merits." (*Id.* at p. 670.) Denial of a petition for a writ of mandate

20

seeking review of a ruling denying a motion to disqualify a judge under section 170.1, therefore, is a final determination of the matters raised by the motion. (See *Frisk v. Superior Court, supra,* 200 Cal.App.4th at p. 415 ["[b]ecause writ relief is the only authorized mode of appellate review for peremptory challenges [under section 170.6], our decision, in contrast to routine summary denials, is binding on the parties, and cannot be revisited on a subsequent appeal"]; see also *Fink v. Shemtov* (2010) 180 Cal.App.4th 1160, 1172; *D.C. v. Harvard-Westlake School* (2009) 176 Cal.App.4th 836, 850; see generally *People v. Panah* (2005) 35 Cal.4th 395, 445 ["defendant filed a writ petition in the Court of Appeal seeking review of the denial of the disqualification motion, which the Court of Appeal summarily denied. Defendant thus received the appellate review of his statutory claim to which he was entitled."].)

ii. Nonstatutory (constitutional) grounds for disqualification

"'A fair trial in a fair tribunal is a basic requirement of due process.'" (*Freeman*, *supra*, 47 Cal.4th at p. 1000, quoting *In re Murchison* (1955) 349 U.S. 133, 136 [75 S.Ct. 623, 99 L.Ed. 942]; see *Caperton, supra,* 556 U.S. at p. 876.) Although the ruling on a statutory motion to disqualify a judge is reviewable only by a writ of mandate, a party may assert on appeal from a final judgment or other appealable order that the judgment or order is constitutionally invalid because of judicial bias. (*People v. Brown, supra,* 6 Cal.4th at p. 335.) "[A] defendant 'may, and should, seek to resolve such issues by statutory means . . . .' [Citation.] [H]owever, . . . a defendant who raised the claim at trial may always 'assert on appeal a claim of denial of the due process right to an impartial judge.'" (*People v. Chatman* (2006) 38 Cal.4th 344, 363; accord, *People v. Mayfield* (1997) 14 Cal.4th 668, 811.)

To establish such a due process violation, actual bias need not be proved; but, "based on an objective assessment of the circumstances in the particular case, there must exist '"the probability of actual bias on the part of the judge or decisionmaker [that] is too high to be constitutionally tolerable."'" (*Freeman, supra*, 47 Cal.4th at p. 996, quoting *Caperton, supra*, 556 U.S. at p. 877.) That is, in contrast to section 170.1, subdivision

21

(a)(6)(A)(iii), which requires disqualification if a person aware of the facts might reasonably entertain a doubt the judge could be impartial, "consistent with its concern that due process guarantees an impartial adjudicator, the [United States Supreme Court] has focused on those circumstances where, even if actual bias is not demonstrated, the probability of bias on the part of the judge is so great as to become 'constitutionally intolerable.'" (*Freeman,* at p. 1001; see *Caperton*, at p. 877.) Under this objective standard, "only the most 'extreme facts' would justify judicial disqualification based on the due process clause." (*Freeman*, at p. 996.) The due process clause does not require judicial disqualification based on the mere appearance of bias. (*Id.* at pp. 1000, 1006.)

c. *Mr. Sanai was not denied his due process right to an impartial judge*

Mr. Sanai concedes he may not challenge on appeal the denial of his November 22, 2013 statement of disqualification on statutory grounds. Nonetheless, citing *Freeman, supra*, 47 Cal.4th 993 and *People v. Chatman, supra,* 38 Cal.4th 344, he insists Judge Brazile should have been disqualified under the due process principles articulated in *Caperton, supra*, 556 U.S. 868 and asserts the propriety of the superior court's denial of that constitutional claim is properly before us as part of this appeal from the dismissal of his lawsuit against The Irvine Company.[15] Mr. Sanai's due process argument appears to be foreclosed by our December 12, 2013 denial of his petition for

---

[15] In his opening brief, filed July 31, 2014, Mr. Sanai also challenged as "flatly illegal"` that portion of the trial court's November 25, 2013 order that prohibited him from filing any new statement of disqualification based upon facts or events occurring prior to the filing of his November 22, 2013 statement. As discussed, on November 6, 2014, in denying a motion to disqualify Judge Brazile filed directly in this court in the instant appeal, we clarified that Mr. Sanai could properly file statements of disqualification in the superior court provided he could assert in good faith that the grounds advanced are "based at least in part on new facts or information being presented 'at the earliest practicable opportunity after discovery.'" As a result, Mr. Sanai filed new statements of disqualification in the superior court on November 10, 2014 and November 26, 2014. The court's denial of these statements was the subject of a further writ proceeding in this court (B260427, *Sanai v. Superior Court*). Accordingly, this issue as raised in Mr. Sanai's appeal is moot.

22

writ of mandate seeking review of the superior court's November 25, 2013 ruling and, in any event, lacks merit.[16]

Mr. Sanai's constitutional claim was based on the same allegations of misconduct as his arguments under sections 170.1 and 170.3, and both statutory and constitutional grounds were presented together in his November 22, 2013 motion. Under *Leone v. Medical Board, supra,* 22 Cal.4th 660 and *Frisk v. Superior Court, supra,* 200 Cal.App.4th 402, our denial of Mr. Sanai's petition for writ of mandate was a final determination of all statutory issues raised by that motion. Because the showing required for finding a constitutional violation is higher than that needed to trigger recusal under section 170.3, subdivision (a)(6)(iii)—the probability, not the mere appearance, of bias (see *Freeman, supra*, 47 Cal.4th at p. 1005)—our implicit conclusion that Mr. Sanai had not established any statutory grounds for recusal should also mean he failed to make the exceptional showing required to justify a finding of a due process violation. That determination was "on the merits" (*Leone*, at p. 670) and "cannot be revisited on a subsequent appeal." (*Frisk*, at p. 415.)

To be sure, the Supreme Court in *Freeman* and *Chatman*, the cases cited by Mr. Sanai, considered the litigants' due process claims regarding judicial bias on appeal from the final judgments even though the defendants had filed and lost statutory motions to disqualify their trial judges. However, in each case the defendant had failed to seek writ review of the adverse ruling on the motion under section 170.3, subdivision (d). Accordingly, the Supreme Court held, although any potential statutory claims had been forfeited, review on appeal was still available for the constitutionally based challenge asserting judicial bias. (See *Freeman, supra*, 47 Cal.4th at p. 1000; *People v. Chatman, supra*, 38 Cal.4th at p. 362.) Those decisions are distinguishable from the instant case

---

[16] Mr. Sanai's briefs in this court are replete with accusations of official misconduct that are not only unsupported by evidence in the appellate record but also irrelevant to the issue actually before us. We have disregarded that material. (See Cal. Rules of Court, rule 8.204(e)(2)(C); *Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1267.)

because no writ petition had been filed; and, therefore, there was no prior appellate evaluation of the sufficiency of the grounds proffered in support of the motion in the trial court. Here, in contrast, in denying Mr. Sanai's writ petition we "judge[d] the petition on its procedural and substantive merits." (*Leone v. Medical Board, supra*, 22 Cal.4th at p. 670.) To permit Mr. Sanai, who coupled overlapping statutory and due process theories for disqualification based on a single set of factual allegations of judicial bias, to pursue both pretrial writ review of his statutory claims and a postjudgment appeal of the constitutional claim would significantly undermine the clear legislative policy that challenges to the impartiality of trial judges should be filed under section 170.1 and subject to prompt review by writ. (See *People v. Hull* (1991) 1 Cal.4th 266, 275; *Tri Counties Bank v. Superior Court* (2008) 167 Cal.App.4th 1332, 1339; but see *People v. Brown, supra*, 6 Cal.4th at p. 336 [considering—and rejecting—due process claim based on facts alleged in unsuccessful disqualification motion under section 170.1 after summary denial of writ relief].)[17]

Even if Mr. Sanai's constitutional claim is properly before us, however, the allegations involving Judge Brazile in his November 22, 2013 statement of disqualification fall well short of establishing a due process violation under the rigorous standard articulated in *Caperton* and *Freeman*. Most of the motion focused on matters that had occurred in the litigation prior to its transfer to Judge Brazile in 2010 and involved claims of misconduct by other individuals (judges, court staff and attorneys). As to Judge Brazile, Mr. Sanai asserted only that he might be the recipient of ex parte

---

[17] *People v. Brown, supra*, 6 Cal.4th 322, a death penalty case, was decided prior to the Supreme Court's decision in *Leone v. Medical Board, supra,* 22 Cal.4th 660, which, as discussed, held the summary denial of a writ petition "is necessarily on the merits" when a writ petition constitutes the exclusive means of obtaining appellate review of an order. Whatever continued viability *Brown* may have in criminal (or at least capital) cases as to the appealability of a due process claim of judicial bias following summary denial of a writ petition raising the same claim under section 170.1, we do not understand it to mean a postjudgment appeal is available in every case in which the Fourteenth Amendment has been appended as an additional ground to the required statutory motion to disqualify.

communications concerning this case from court counsel Frederick Bennett; incorrectly ruled that Mr. Sanai was a vexatious litigant, a finding we reversed in *Sanai 2013*; and misstated the timing of several procedural steps that had been taken in connection with Mr. Sanai's multiple efforts to disqualify Judge Brazile.  Whether viewed separately or in combination, these claims, "objectively considered, . . . do not pose '"such a risk of actual bias or prejudgment"' [citation] as to require disqualification."  (*Freeman, supra*, 47 Cal.4th at p. 1006.)

## DISPOSITION

The order of dismissal is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.  On remand Mr. Sanai may file a motion for leave to amend his complaint.  We express no opinion on the merits of the motion.

We have considered Mr. Sanai's request that we direct all further proceedings in this case be heard by a different trial judge (§ 170.1, subd. (c)); that request is denied. The parties are to bear their own costs on appeal.

PERLUSS, P. J.

We concur:

ZELON, J.

WILLHITE, J. *

---

*       Associate Justice of the Court of Appeal, Second Appellate District, Division Four, assigned to Division Seven, by the Chief Justice pursuant to article VI, section 6 of the California Constitution.